IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

CASE NO.: 15-12032

————————————

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

JONATHAN TYLER PRIVE,

Defendant/Appellant

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

———————————————

APPELLANT'S CORRECTED APPENDIX ON APPEAL

———————————————

DANIEL N. BRODERSEN, ESQ.
533 N. MAGNOLIA AVENUE
ORLANDO, FLORIDA 32801
TELEPHONE: (407) 649-0007
FACSIMILE: (407) 649-0017
EMAIL:     brodersend@gmail.com
CJA COUNSEL FOR APPELLANT

No.:15-12032

*United States of America v. Jonathan Tyler Prive*

## INDEX TO CORRECTED APPENDIX

**Document (Dist. Ct. Docket #)**                                    **Page No.**

Criminal Docket Sheet.................................................................1

Indictment (Doc. 1)..........................................................................9

Plea Agreement (Doc. 27)..........................................................14

Transcript of Change of Plea Hearing (Docs. 28, 37).................41

Transcript of Sentencing Hearing (Docs. 89, 120) ....................57

Transcript of Continuation of Sentencing Hearing (Doc. 95, 114)...84

Memorandum Order (Doc. 100).........................................113

Judgment in a Criminal Case (Doc. 98)................................132

Certificate of Service...................................................................138

APPEAL, CLOSED

## U.S. District Court
### Middle District of Florida (Orlando)
### CRIMINAL DOCKET FOR CASE #: 6:14-cr-00033-JA-KRS-1

Case title: USA v. Prive

Date Filed: 02/19/2014
Date Terminated: 04/22/2015

---

Assigned to: Judge John Antoon II
Referred to: Magistrate Judge Karla R. Spaulding

Appeals court case number: 15-12032 USCA

### Defendant (1)

**Jonathan Tyler Prive**
# 60386-018
Brevard County Jail Complex
860 Camp Rd.
Cocoa, FL 32927
*TERMINATED: 04/22/2015*

represented by **Daniel Newton Brodersen**
Brodersen Law Firm
533 N Magnolia Ave
Orlando, FL 32801
407-649-0007
Fax: 407-649-0017
Email: brodersend@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: CJA Appointment

**Jose Rodriguez**
Jose Rodriguez, PA
1434 E Michigan St
Orlando, FL 32806
407/898-8686
Fax: 407/898-8626
Email: jr@joserodriguezlaw.com
*TERMINATED: 11/03/2014*
Designation: CJA Appointment

**Patrick Michael Megaro**
Halscott Megaro P.A.
33 E Robinson St Ste 210
Orlando, FL 32801
407-255-2165
Fax: 855-224-1671
Email: KC2QBN@yahoo.com
*TERMINATED: 02/18/2015*
Designation: CJA Appointment

### Pending Counts

18:2422.F COERCION OR ENTICEMENT OF MINOR
(using a facility and means of interstate commerce, did
persuade, induce, entice and coerce a minor to engage in
sexual activity)
(2)

### Disposition

Imprisonment: 365 months; Deft. is remanded to the
custody of the U.S. Marshal. Supervised release: Life;
Mandatory drug testing requirements are waived. Special
conditions of supervised release: Deft. shall be prohibited
from incurring new credit charges, opening additional
lines of credit, etc. and provide probation officer access to
any requested financial information. Sex offender
conditions: Participate in a sexual offender mental health
treatment program; No contact with minor children;
Media and computer restrictions imposed; Register with
all sex offender registries as required by law; Submit to a
search of your person, residence, place of business, etc.;
Cooperate in the collection of DNA. Fine: Waived;
Special assessment: $100.00.

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18:2422.F COERCION OR ENTICEMENT OF MINOR (using a facility and means of interstate commerce, did persuade, induce, entice and coerce a minor to engage in sexual activity) (1) | Dismissed |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Plaintiff**

USA                                          represented by **Andrew C. Searle**
                                             US Attorney's Office - FLM
                                             Suite 3100
                                             400 W Washington St
                                             Orlando, FL 32801
                                             407/648-7500
                                             Email: andrew.searle@usdoj.gov
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*
                                             Designation: Retained

| Date Filed | # | Docket Text |
|---|---|---|
| 02/19/2014 | 1 | INDICTMENT returned in open court as to Jonathan Tyler Prive (1) Counts 1-2. (GJS) (Entered: 02/20/2014) |
| 02/20/2014 | 3 | NOTICE of estimated length of trial by USA. Estimated trial length: Three days days. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 4 | CERTIFICATE of interested persons and corporate disclosure statement by USA (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 5 | NOTICE OF ATTORNEY APPEARANCE Andrew C. Searle appearing for USA. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 6 | NOTICE of possible conflict of interest by USA as to Jonathan Tyler Prive A possible conflict of interest does exist. (Searle, Andrew) (Entered: 02/20/2014) |
| 02/20/2014 | 7 | NOTICE of pendency of related cases re order of compliance to Local Rule as to Jonathan Tyler Prive by USA. Related case(s): yes (Searle, Andrew) (Entered: 02/20/2014) |
| 02/21/2014 | 8 | MOTION for Writ of Habeas Corpus ad prosequendum by USA as to Jonathan Tyler Prive. (Attachments: # 1 Text of Proposed Order)(Searle, Andrew) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 02/21/2014) |
| 02/21/2014 | 9 | ORDER granting 8 Motion for Writ of Habeas Corpus ad prosequendum. WRIT ISSUED as to Jonathan Tyler Prive (1). Initial Appearance set for 3/14/2014 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. Signed by Magistrate Judge Karla R. Spaulding on 2/21/2014. (copies provided) (ECJ) (Entered: 02/21/2014) |
| 02/27/2014 | 10 | NOTICE *of Similar Case* by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 02/27/2014) |
| 02/27/2014 | 11 | MOTION to transfer case *to Judge Antoon (related to 6:13-cr-280-Orl-28DAB)* by USA as to Jonathan Tyler Prive. (Searle, Andrew) Modified on 2/28/2014 (MAA). (Entered: 02/27/2014) |
| 03/05/2014 | 12 | ORDER granting 11 Motion to Transfer case as to Jonathan Tyler Prive (1). Pursuant to Local Rule 1.04(b), this case is hereby TRANSFERRED to United States District Judge John Antoon II, Orlando Division, for all further proceedings. The Clerk is hereby directed to transfer this case to District Judge John Antoon II, Orlando Division. Signed by Judge Charlene Edwards Honeywell on 3/5/2014. (BGS) (Entered: 03/05/2014) |
| 03/06/2014 | 13 | Case as to Jonathan Tyler Prive Reassigned to Judge John Antoon II. New case number: 6:14-cr-33-Orl-28KRS. Judge Charlene Edwards Honeywell no longer assigned to the case. (MAA) (Entered: 03/06/2014) |

| 03/10/2014 | 14 | ARREST Warrant Returned Executed on 3/7/14 as to Jonathan Tyler Prive. (RDO) (Entered: 03/10/2014) |
| --- | --- | --- |
| 03/14/2014 | | Arrest of Jonathan Tyler Prive on 3/14/2014. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 15 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Initial Appearance as to Jonathan Tyler Prive held on 3/14/2014, ARRAIGNMENT as to Jonathan Tyler Prive (1) Count 1-2 held on 3/14/2014 Defendant, pled not guilty. (DIGITAL) (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 16 | ***CJA 23 Financial Affidavit by Jonathan Tyler Prive. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 17 | NOTICE OF ATTORNEY APPEARANCE: Jose Rodriguez appearing for Jonathan Tyler Prive. (ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 18 | SCHEDULING ORDER as to Jonathan Tyler Prive. Status Conference set for 4/17/2014 at 09:15 AM in Orlando Courtroom 6 B before Judge John Antoon II, Jury Trial set for 5/5/2014 at 09:00 AM in Orlando Courtroom 6 B before Judge John Antoon II. Signed by Magistrate Judge Karla R. Spaulding on 3/14/2014. (copies provided)(ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 19 | ORDER OF DETENTION PENDING TRIAL as to Jonathan Tyler Prive. Defendant is not eligible due to outstanding warrants or detainers in another jurisdiction. Signed by Magistrate Judge Karla R. Spaulding on 3/14/2014. (copies provided)(ECJ) (Entered: 03/14/2014) |
| 03/14/2014 | 20 | ARREST Warrant Returned Executed on 3/7/14 as to Jonathan Tyler Prive. (LAK) (Entered: 03/14/2014) |
| 04/16/2014 | 21 | First MOTION to continue trial until July 1, 2014 and to enlarge the period for the filing of pretrial motions up to and including June 1, 2014 by Jonathan Tyler Prive. (Rodriguez, Jose) Modified on 4/17/2014 (MAL). (Entered: 04/16/2014) |
| 04/17/2014 | 22 | Minute Entry for proceedings held before Judge John Antoon II: CRIMINAL STATUS Conference as to Jonathan Tyler Prive held on 4/17/2014. Court grants Defendant's motion to continue trial - Separate order to be entered. Counsel for Govt: Andrew Searle; Counsel for Deft: Jose Rodriguez. Start time: 9:47 a.m; End time: 9:52 a.m. Court Reporter: Diane Peede (DJD) (Entered: 04/18/2014) |
| 04/23/2014 | 23 | WAIVER of speedy trial by Jonathan Tyler Prive (Attachments: # 1 Main Document Certificate of Service)(Rodriguez, Jose) (Entered: 04/23/2014) |
| 05/01/2014 | 24 | ORDER granting 21 Motion to continue trial as to Jonathan Tyler Prive. Jury Trial reset for the trial term commencing 9/2/2014 in Orlando Courtroom 6 B before Judge John Antoon II. Status Conference set for 8/15/2014 at 09:15 AM in Orlando Courtroom 6 B before Judge John Antoon II. Signed by Judge John Antoon II on 5/1/2014. CTP (DJD) (Entered: 05/01/2014) |
| 08/15/2014 | 25 | Minute Entry for status conference proceedings held before Judge John Antoon II as to Jonathan Tyler Prive on 8/15/2014. Andrew Searle appears for the government, Jose Rodriguez appears for the defendant. Counsel for Defendant informs the Court this case should resolve by a guilty plea. The Court informs the parties that if the case does go to trial, it will be heard the week of 9/2/2014. Court Reporter: Amie First. Time in Court: 9:32 a.m. - 9:35 a.m. (LAM) (Entered: 08/15/2014) |
| 08/15/2014 | 26 | NOTICE OF HEARING as to Jonathan Tyler Prive: Change of Plea Hearing set for 8/27/2014 at 09:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 08/15/2014) |
| 08/26/2014 | 27 | PLEA AGREEMENT re: count(s) Two of the Indictment as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 08/26/2014) |
| 08/27/2014 | 28 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Change of Plea Hearing as to Jonathan Tyler Prive held on 8/27/2014. (DIGITAL) (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 29 | NOTICE regarding plea of guilty by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 30 | CONSENT TO INSPECTION of Presentence Investigation Report by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 31 | REPORT AND RECOMMENDATIONS concerning Plea of Guilty re: Count Two of the Indictment as to Jonathan Tyler Prive. Signed by Magistrate Judge Karla R. Spaulding on 8/27/2014. (copies provided)(ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 32 | NOTICE of no objection re 31 Report and Recommendations concerning plea of guilty by USA as to Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/27/2014 | 33 | NOTICE of no objection re 31 Report and Recommendations concerning plea of guilty by Jonathan Tyler Prive. (ECJ) (Entered: 08/27/2014) |
| 08/28/2014 | 34 | NOTICE OF HEARING as to Jonathan Tyler Prive: Sentencing set for 1/9/2015 at 09:30AM in Orlando Courtroom 6 B before Judge John Antoon II. Note to Counsel: 1) Counsel should call the Courtroom Deputy Clerk at (407) 835-4304 if they anticipate this hearing will take longer than 15 minutes. 2) The Pre-sentence report shall be provided to the Court by December 5, 2014 by the Probation Office. 3) Any sentencing memoranda, expert reports or other documentation the parties wish the Court to consider shall be filed by December 12, 2014. CTP(DJD) (Entered: 08/28/2014) |
| 08/28/2014 | 35 | NOTICE to Court Regarding Forfeiture by USA as to Jonathan Tyler Prive (Andrejko, Nicole) (Entered: 08/28/2014) |

| | | |
|---|---|---|
| 08/29/2014 | 36 | ACCEPTANCE OF PLEA of guilty and adjudication of guilt re: Count Two of the Indictment as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 8/29/2014. CTP (DJD) (Entered: 08/29/2014) |
| 09/22/2014 | 37 | TRANSCRIPT of change of plea as to Jonathan Tyler Prive held on 8-27-14 before Judge Karla R. Spaulding. Court Reporter/Transcriber Sandy Tremel, Telephone number 407-245-3110. Tape Number: digital. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 10/14/2014, Redacted Transcript Deadline set for 10/23/2014, Release of Transcript Restriction set for 12/22/2014. (SKT) (Entered: 09/22/2014) |
| 09/22/2014 | 38 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 09/22/2014) |
| 10/21/2014 | 39 | ***STRICKEN*** MOTION to Appoint Counsel by Jonathan Tyler Prive. FILED PRO SE. (IGC) Motions referred to Magistrate Judge Karla R. Spaulding. Modified on 10/22/2014 (JET). ***STRICKEN PER ORDER #40. (Entered: 10/21/2014) |
| 10/21/2014 | 40 | ENDORSED ORDER striking 39 Motion to appoint counsel as to Jonathan Tyler Prive (1). Mr. Prive is represented by counsel and may not file motions on his own behalf. The Court requests that Mr. Prive's counsel contact him expeditiously to discuss the issues raised by the filing and notify the Court through a motion if a hearing on this matter is requested. Counsel for Mr. Prive should also provide him with a copy of this text-entry order. Signed by Magistrate Judge Karla R. Spaulding on 10/21/2014. (Spaulding, Karla) (Entered: 10/21/2014) |
| 10/29/2014 | 41 | First MOTION to Withdraw as Attorney by Jose Rodriguez. by Jonathan Tyler Prive. (Rodriguez, Jose) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 10/29/2014) |
| 10/29/2014 | 42 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 41 First MOTION to Withdraw as Attorney by Jose Rodriguez. Motion Hearing set for 11/3/2014 at 01:30 PM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 10/29/2014) |
| 11/03/2014 | 43 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 11/3/2014 re 41 First MOTION to Withdraw as Attorney by Jose Rodriguez filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 11/03/2014) |
| 11/03/2014 | 44 | ORDER granting 41 Motion to Withdraw as Attorney. Jose Rodriguez, Esq., is relieved of his appointment to represent the Defendant and Daniel Brodersen, Esq., is appointed to represent the Defendant. Signed by Magistrate Judge Karla R. Spaulding on 11/3/2014. (ECJ) (Entered: 11/03/2014) |
| 11/07/2014 | 45 | RULE 32(e)(2) INITIAL PRESENTENCE INVESTIGATION REPORT as to Jonathan Tyler Prive. E-copies made available to selected parties.(MF) (Entered: 11/07/2014) |
| 12/05/2014 | 46 | RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Jonathan Tyler Prive. E-copies made available to selected parties.(CS) (Entered: 12/05/2014) |
| 12/09/2014 | 48 | Verified MOTION to Withdraw Plea of Guilty by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 12/09/2014) |
| 12/09/2014 | 49 | NOTICE of Clarification by Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty . (Brodersen, Daniel) (Entered: 12/09/2014) |
| 12/10/2014 | 50 | MOTION to extend time until 12/19/14 to Submit Sentencing Memorandum by Jonathan Tyler Prive. (Brodersen, Daniel) Modified on 12/11/2014 (IGC). (Entered: 12/10/2014) |
| 12/12/2014 | 51 | SENTENCING MEMORANDUM by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 12/12/2014) |
| 12/15/2014 | 52 | ENDORSED ORDER requiring the United States to file a response to Defendant's Verified Motion to Withdraw Guilty Plea 48 on or before December 19, 2014. Signed by Magistrate Judge Karla R. Spaulding on 12/15/2014. (Spaulding, Karla) (Entered: 12/15/2014) |
| 12/19/2014 | 53 | ENDORSED ORDER granting 50 Motion to extend time to submit sentencing memorandum as to Jonathan Tyler Prive. Defendant has up to and including January 6, 2015 to file their sentencing memorandum. Signed by Judge John Antoon II on 12/19/2014. CTP(DJD) (Entered: 12/19/2014) |
| 12/19/2014 | 54 | RESPONSE in Opposition by USA as to Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty (Attachments: # 1 Exhibit A)(Searle, Andrew) (Entered: 12/19/2014) |
| 12/23/2014 | 55 | REPORT AND RECOMMENDATIONS as to Jonathan Tyler Prive that 48 Verified MOTION to withdraw plea of guilty be granted. Signed by Magistrate Judge Karla R. Spaulding on 12/23/2014. (LAK) (Entered: 12/23/2014) |
| 01/06/2015 | 56 | OBJECTION to 55 Report and Recommendations by USA as to Jonathan Tyler Prive (Searle, Andrew) Modified on 1/6/2015 (JET). (Exhibit A is filed at 58 .) (Entered: 01/06/2015) |

| | | |
|---|---|---|
| 01/06/2015 | 57 | Unopposed MOTION to Continue Sentencing by USA as to Jonathan Tyler Prive. (Searle, Andrew) (Entered: 01/06/2015) |
| 01/06/2015 | 58 | NOTICE of Filing Exhibit A to Objections 56 by USA as to Jonathan Tyler Prive (Attachments: # 1 Exhibit A)(Searle, Andrew) Modified on 1/6/2015 (JET). (Entered: 01/06/2015) |
| 01/06/2015 | 59 | ENDORSED ORDER granting 57 Motion to Continue sentencing as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 1/6/2015. CTP(DJD) (Entered: 01/06/2015) |
| 01/06/2015 | 60 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for January 9, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 2/6/2015 at 10:00AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 01/06/2015) |
| 01/07/2015 | 61 | NOTICE OF HEARING as to Jonathan Tyler Prive: evidentiary hearing on 48 motion to withdraw guilty plea set for January 22, 2015 at 9:30 a.m. Signed by Judge John Antoon II on 1/7/2015. (HV) (Entered: 01/07/2015) |
| 01/16/2015 | 62 | AMENDED 61 NOTICE OF HEARING as to Jonathan Tyler Prive: evidentiary hearing on 48 motion to withdraw guilty plea set for January 22, 2015 at 9:30 a.m. Current counsel shall be prepared to discuss the Court's standard of review with regard to 55 Report and Recommendation. Signed by Judge John Antoon II on 1/16/2015. (HV) Modified on 1/16/2015 (MAL). (Entered: 01/16/2015) |
| 01/16/2015 | | Set hearings as to Jonathan Tyler Prive: Evidentiary Hearing set for 1/22/2015 at 09:30 AM in Orlando Courtroom 6 B before Judge John Antoon II. (MAL) (Entered: 01/16/2015) |
| 01/20/2015 | 63 | RESPONSE 56 Objection to Report and Recommendations by Jonathan Tyler Prive (Brodersen, Daniel) (Entered: 01/20/2015) |
| 01/21/2015 | 64 | NOTICE to the Court regarding the standard of review of the Magistrate Judge's Report and Recommendation by USA as to Jonathan Tyler Prive re 55 REPORT AND RECOMMENDATIONS as to Jonathan Tyler Prive re 48 Verified MOTION to Withdraw Plea of Guilty .. (Searle, Andrew) (Entered: 01/21/2015) |
| 01/22/2015 | 65 | Minute Entry for proceedings held before Judge John Antoon II: Motion Hearing as to Jonathan Tyler Prive held on 1/22/2015 re 48 Verified MOTION to Withdraw Plea of Guilty filed by Jonathan Tyler Prive. Witnesses: Jonathan Prive and Jose Rodriguez. Court takes motion under advisement and will issue written order. Court Reporter: Koretta Stanford (DJD) (Entered: 01/23/2015) |
| 02/05/2015 | 66 | MOTION to Withdraw as Attorney by Daniel N. Brodersen. by Jonathan Tyler Prive. (Brodersen, Daniel) Motions referred to Magistrate Judge Karla R. Spaulding. (Entered: 02/05/2015) |
| 02/05/2015 | 67 | ORDER denying 48 Motion to Withdraw Plea of Guilty as to Jonathan Tyler Prive; sustaining 56 Objections to 55 Report and Recommendation; declining to adopt 55 Report and Recommendation. Signed by Judge John Antoon II on 2/5/2015. (HV) (Entered: 02/05/2015) |
| 02/05/2015 | 68 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for February 6, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 2/27/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 02/05/2015) |
| 02/05/2015 | 69 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. Motion Hearing set for 2/10/2015 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. (copies provided)(ECJ) (Entered: 02/05/2015) |
| 02/10/2015 | 70 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 2/10/2015 re 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 02/10/2015) |
| 02/10/2015 | 71 | ORDER appointing counsel as to Jonathan Tyler Prive. It is ORDERED that Patrick Megaro, Esq., is appointed to represent Defendant Jonathan Tyler Prive pursuant to 18 U.S.C. § 3006(A). Signed by Magistrate Judge Karla R. Spaulding on 2/10/2015. (copies provided)(ECJ) (Entered: 02/10/2015) |
| 02/10/2015 | 72 | NOTICE OF HEARING ON MOTION in case as to Jonathan Tyler Prive: 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. Continuation of Motion Hearing set for 2/18/2015 at 10:30 AM in Orlando Courtroom 5 D before Magistrate Judge Karla R. Spaulding. The Defendant is required to be present. (copies provided)(ECJ) (Entered: 02/10/2015) |
| 02/11/2015 | 74 | Unopposed MOTION to Continue Sentencing Proceedings by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 02/11/2015) |
| 02/11/2015 | 75 | ORDER denying without prejudice 74 Motion to Continue as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 2/11/2015. (HV) (Entered: 02/11/2015) |
| 02/18/2015 | 76 | Minute Entry for proceedings held before Magistrate Judge Karla R. Spaulding: Motion Hearing as to Jonathan Tyler Prive held on 2/18/2015 re 66 MOTION to Withdraw as Attorney by Daniel N. Brodersen. filed by Jonathan Tyler Prive. (DIGITAL) (ECJ) (Entered: 02/18/2015) |
| 02/18/2015 | 77 | ORDER withdrawing 66 Motion to Withdraw as Counsel of Record as to Jonathan Tyler Prive (1). Signed by Magistrate Judge Karla R. Spaulding on 2/18/2015. (ECJ) (Entered: 02/18/2015) |

| 02/23/2015 | 78 | Second MOTION to Continue Sentencing Proceedings *(Unopposed)* by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 02/23/2015) |
|---|---|---|
| 02/23/2015 | 79 | ENDORSED ORDER granting 78 Motion to Continue sentencing as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 2/23/2015. CTP(DJD) (Entered: 02/23/2015) |
| 02/23/2015 | 80 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for February 27, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 3/27/2015 at 10:00AM in Orlando Courtroom 6 B before Judge John Antoon II. All Objections to the Pre-Sentence Report or Motions pertaining thereto shall be in writing and filed no later than three (3) days prior to the sentencing hearing. Counsel is to notify the Courtroom Deputy Clerk as soon as possible if they believe the sentencing will be longer than 30 minutes. CTP(DJD) (Entered: 02/23/2015) |
| 02/26/2015 | 81 | ORDER as to Jonathan Tyler Prive. No later than March 20, 2015, the Government and Defendant shall submit to the Court additional arguments and supporting authority for any issue pertaining to sentencing that have not previously been addressed. Signed by Judge John Antoon II on 2/25/2015. CTP(DJD) (Entered: 02/26/2015) |
| 03/20/2015 | 82 | AMENDED RULE 32(g) FINAL PRESENTENCE INVESTIGATION REPORT as to Jonathan Tyler Prive. E-copies made available to selected parties.(CS) (Entered: 03/20/2015) |
| 03/26/2015 | 84 | Renewed MOTION for Daniel N. Brodersen to Withdraw as Attorney by Jonathan Tyler Prive. (Brodersen, Daniel) Motions referred to Magistrate Judge Karla R. Spaulding. Modified on 3/27/2015 (JET). (Entered: 03/26/2015) |
| 03/26/2015 | 85 | NOTICE canceling Sentencing hearing scheduled for March 27, 2015 as to Jonathan Tyler Prive. The Court will reschedule the sentencing by separate notice following ruling on the Defendant's second motion to withdraw as attorney. CTP (DJD) (Entered: 03/26/2015) |
| 03/27/2015 | 86 | ORDER denying 84 Renewed Motion to Withdraw as Counsel as to Jonathan Tyler Prive (1). Signed by Magistrate Judge Karla R. Spaulding on 3/27/2015. (ECJ) (Entered: 03/27/2015) |
| 03/27/2015 | 87 | NOTICE OF RESCHEDULING HEARING: The Sentencing hearing previously scheduled for March 27, 2015 is rescheduled as to Jonathan Tyler Prive. New hearing date and time:Sentencing set for 4/15/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 03/27/2015) |
| 04/14/2015 | 88 | PRESENTENCE REPORT SUPPLEMENTAL MEMORANDUM/ATTACHMENTS as to Jonathan Tyler Prive. E-copies made available to selected parties.(CCS) (Entered: 04/14/2015) |
| 04/15/2015 | 89 | Minute Entry for proceedings held before Judge John Antoon II: Sentencing proceedings held on April 15, 2015. Defense counsel advises the Court that defendant requests he be allowed to file a motion pro se for the Court's consideration. The Court waives the rule and allows defendant's pro se motion to be filed. The Court Denies defendant's pro se motion to terminate proceedings and vacate sentence. Court hears argument on objections to the PSR and continues the sentencing to allow defendant to file a written response to the enhancement requested by the Government. Sentencing will be reset by separate notice. Counsel for Govt: Andrew Searle; Counsel for Deft: Daniel Brodersen. Times: 10:30-11:20 a.m; 11:35-11:55 p.m. Court Reporter: Sandy Tremel (DJD) (Entered: 04/15/2015) |
| 04/15/2015 | 90 | Pro Se MOTION to terminate proceedings and Vacate Sentence by Jonathan Tyler Prive filed in open court. (DJD) (Entered: 04/15/2015) |
| 04/15/2015 | 91 | **ORAL ORDER denying 90 Motion to terminate proceedings and Vacate sentence as to Jonathan Tyler Prive. Entered by Judge John Antoon II on 4/15/2015. (DJD)** (Entered: 04/15/2015) |
| 04/15/2015 | 92 | NOTICE OF HEARING as to Jonathan Tyler Prive: Continuation of Sentencing set for 4/22/2015 at 10:30AM in Orlando Courtroom 6 B before Judge John Antoon II. CTP(DJD) (Entered: 04/15/2015) |
| 04/17/2015 | 93 | MEMORANDUM in support re 82 Presentence Investigation Report (Parties) Probation - SEALED by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 04/17/2015) |
| 04/21/2015 | 94 | NOTICE *Regarding the Applicability of USSG 4B1.5* by Jonathan Tyler Prive re 89 Sentencing. (Brodersen, Daniel) (Entered: 04/21/2015) |
| 04/22/2015 | 95 | Minute Entry for proceedings held before Judge John Antoon II: SENTENCING held on 4/22/2015 for Jonathan Tyler Prive on Count 2 - Imprisonment: 365 months; Deft. is remanded to the custody of the U.S. Marshal. Supervised release: Life; Mandatory drug testing requirements are waived. Special conditions of supervised release: Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit, etc. and provide probation officer access to any requested financial information. Sex offender conditions: Participate in a sexual offender mental health treatment program; No contact with minor children; Media and computer restrictions imposed; Register with all sex offender registries as required by law; Submit to a search of your person, residence, place of business, etc.; Cooperate in the collection of DNA. Fine: Waived; Special assessment: $100.00. Count 1 of the Indictment is Dismissed. Court Reporter: Diane Peede (DJD) (Entered: 04/23/2015) |
| 04/26/2015 | 96 | MOTION for miscellaneous relief, specifically For an Order Directing the U.S. Marshal's Service to Transfer Custody of Defendant to State Authorities by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 04/26/2015) |

| 04/27/2015 | 97 | MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence by Jonathan Tyler Prive. (Brodersen, Daniel) (Entered: 04/27/2015) |
| --- | --- | --- |
| 04/27/2015 | 98 | **JUDGMENT as to Jonathan Tyler Prive - Count 1 is Dismissed; Count 2 - Imprisonment: 365 months; Deft. is remanded to the custody of the U.S. Marshal. Supervised release: Life; Mandatory drug testing requirements are waived. Special conditions of supervised release: Deft. shall be prohibited from incurring new credit charges, opening additional lines of credit, etc. and provide probation officer access to any requested financial information. Sex offender conditions: Participate in a sexual offender mental health treatment program; No contact with minor children; Media and computer restrictions imposed; Register with all sex offender registries as required by law; Submit to a search of your person, residence, place of business, etc.; Cooperate in the collection of DNA. Fine: Waived; Special assessment: $100.00. Signed by Judge John Antoon II on 4/27/2015. (DJD) CTP (Entered: 04/27/2015)** |
| 04/27/2015 | 99 | STATEMENT OF REASONS as to Jonathan Tyler Prive. E-copies made available to selected parties. (DJD) (Entered: 04/27/2015) |
| 04/27/2015 | 100 | **MEMORANDUM ORDER regarding sentencing factors as to Jonathan Tyler Prive. Signed by Judge John Antoon II on 4/27/2015. (DJD)** (Entered: 04/27/2015) |
| 05/05/2015 | 101 | NOTICE OF APPEAL by Jonathan Tyler Prive re 100 Order, 98 Judgment Filing fee not paid. (Brodersen, Daniel) (Entered: 05/05/2015) |
| 05/05/2015 | 102 | TRANSMITTAL of initial appeal package as to Jonathan Tyler Prive to USCA consisting of copies of notice of appeal, docket sheet, order/judgment being appealed, and motion, if applicable to USCA re 101 Notice of Appeal. Eleventh Circuit Transcript information form forwarded to pro se litigants and available to counsel at www.flmd.uscourts.gov under Forms and Publications/General. CTP (Entered: 05/05/2015) |
| 05/12/2015 | | USCA Case Number 15-12032 for 101 Notice of Appeal filed by Jonathan Tyler Prive. (LAK) (Entered: 05/12/2015) |
| 05/19/2015 | 103 | TRANSCRIPT information form filed by Jonathan Tyler Prive for proceedings held on August 27, 2014, January 22, 2015, April 15, 2015, and April 22, 2015 before Judge Spalding and Antoon re 101 Notice of Appeal. USCA number: 15-12032 (Attachments: # 1 Supplement CJA 24)(Brodersen, Daniel) (Entered: 05/19/2015) |
| 05/26/2015 | 104 | COURT REPORTER ACKNOWLEDGEMENT by Sandy Tremel re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 6-25-15. USCA number: 15-12032. (SKT) (Entered: 05/26/2015) |
| 05/26/2015 | 105 | **ENDORSED ORDER directing USA to respond to 97 MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence as to Jonathan Tyler Prive. Responses due by 6/4/2015. Signed by Judge John Antoon II on 5/26/2015. CTP(DJD)** (Entered: 05/26/2015) |
| 06/02/2015 | 106 | COURT REPORTER ACKNOWLEDGEMENT by Koretta Stanford re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 7/2/15. USCA number: 15-12032. (KS) (Entered: 06/02/2015) |
| 06/04/2015 | 107 | RESPONSE to Motion re 97 MOTION for miscellaneous relief, specifically For an Order Directing the Government to Preserve Evidence by USA as to Jonathan Tyler Prive (Searle, Andrew) (Entered: 06/04/2015) |
| 06/09/2015 | 108 | COURT REPORTER ACKNOWLEDGEMENT by Diane Peede re 101 Notice of Appeal as to Jonathan Tyler Prive. Estimated transcript filing date: 7/2/15. USCA number: 15-12032. (DP) (Entered: 06/09/2015) |
| 06/09/2015 | 109 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 06/09/2015) |
| 06/09/2015 | 110 | NOTICE FILED IN ERROR. Modified on 6/9/2015 (GJS). (Entered: 06/09/2015) |
| 06/09/2015 | 111 | NOTIFICATION that transcript has been filed by Sandy Tremel re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032-CA (SKT) (Entered: 06/09/2015) |
| 06/18/2015 | 112 | **ORDER granting 97 Motion for an Order Directing the Government to Preserve Evidence as to Jonathan Tyler Prive (1); ordering the Government to preserve all evidence in this case until the conclusion of Defendant's state case and any appellate proceedings. Signed by Judge John Antoon II on 6/17/2015. (HV)** (Entered: 06/18/2015) |
| 06/19/2015 | 113 | **ENDORSED ORDER denying as moot 96 Motion for order directing the U.S. Marshal's service to transfer custody of defendant to State authorities as to Jonathan Tyler Prive. The Court has been informed by the U.S. Marshal that the defendant was released to state custody at the Brevard County Jail on May 11, 2015. Signed by Judge John Antoon II on 6/19/2015. (DJD)** (Entered: 06/19/2015) |
| 06/25/2015 | 114 | TRANSCRIPT of the continuation of the sentencing (Vol. II) for the date of 4/22/15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Diane Peede, FlaDiane@att.net, telephone number (407) 615-0305. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through |

| | | |
|---|---|---|
| | | PACER or purchased through the Court Reporter. Redaction Request due 7/16/2015, Redacted Transcript Deadline set for 7/27/2015, Release of Transcript Restriction set for 9/23/2015. (DP) (Entered: 06/25/2015) |
| 06/25/2015 | 115 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT (Doc. No. 114). The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Diane Peede (DP) (Entered: 06/25/2015) |
| 06/25/2015 | 116 | NOTIFICATION that transcript has been filed by Diane Peede re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032 (DP) (Entered: 06/25/2015) |
| 06/30/2015 | 117 | TRANSCRIPT of Motion/Evidentiary Hearing for date of 01/22/15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Koretta Stanford, Telephone number 407-872-1715. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/21/2015, Redacted Transcript Deadline set for 7/31/2015, Release of Transcript Restriction set for 9/28/2015. (KS) (Entered: 06/30/2015) |
| 06/30/2015 | 118 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT, Doc. 117. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Koretta Stanford (KS) (Entered: 06/30/2015) |
| 06/30/2015 | 119 | NOTIFICATION that transcript has been filed by Koretta Stanford re: 101 Notice of Appeal as to Jonathan Tyler Prive USCA number: 15-12032 (KS) (Entered: 06/30/2015) |
| 07/02/2015 | 120 | TRANSCRIPT of sentencing volume 1 for dates of 4-15-15 held before Judge John Antoon II, re: 101 Notice of Appeal as to Jonathan Tyler Prive. Court Reporter/Transcriber Sandy Tremel, Telephone number 407-288-6343, sandy.tremel@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 7/23/2015, Redacted Transcript Deadline set for 8/3/2015, Release of Transcript Restriction set for 9/30/2015. (SKT) (Entered: 07/02/2015) |
| 07/02/2015 | 121 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal as to Jonathan Tyler Prive. Court Reporter: Sandy Tremel (SKT) (Entered: 07/02/2015) |
| 07/06/2015 | | Mail returned as Undeliverable re: 112 Order on Motion for Miscellaneous Relief. Mail resent to Jonathan Tyler Prive at Brevard County Jail Complex. See Order #113. (JET) (Entered: 07/07/2015) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/10/2015 09:04:46 | | |
| PACER Login: | dannylaw1172:4395029:0 | Client Code: |
| Description: | Docket Report | Search Criteria: | 6:14-cr-00033-JA-KRS |
| Billable Pages: | 12 | Cost: | 1.20 |

FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

2014 FEB 19  PM 4: 02

UNITED STATES OF AMERICA

v.

JONATHAN TYLER PRIVE

CASE NO. 6:14-cr-33-Orl-36-KRS
18 U.S.C. § 2422(b)
18 U.S.C. § 2428 - Forfeiture

## INDICTMENT

The Grand Jury charges:

## COUNT ONE

Beginning on or about September 9, 2013, and continuing through and including on or about September 10, 2013, in Brevard County, Florida, in the Middle District of Florida, and elsewhere,

### JONATHAN TYLER PRIVE,

the defendant herein, using a facility and means of interstate commerce, that is, the Internet and cell phone, did knowingly persuade, induce, entice and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which any person could be charged with a criminal offense under the laws of the State of Florida law, that is, Lewd or lascivious molestation and conduct, violations of Section 800.04, Florida Statutes, and Sexual battery, a violation of Section 794.011, Florida Statutes.

All in violation of Title 18, United States Code, Section 2422(b).

### COUNT TWO

Beginning on or about November 4, 2013, and continuing through and including on or about November 5, 2013, in Brevard County, Florida, in the Middle District of Florida, and elsewhere,

### JONATHAN TYLER PRIVE,

the defendant herein, using a facility and means of interstate commerce, that is, the Internet and cell phone, did knowingly attempt to persuade, induce, entice and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which any person could be charged with a criminal offense under the laws of the State of Florida law, that is, Lewd or lascivious molestation and conduct, violations of Section 800.04, Florida Statutes, and Sexual battery, a violation of Section 794.011, Florida Statutes.

All in violation of Title 18, United States Code, Section 2422(b).

### FORFEITURE

1.     The allegations contained in Counts One and Two of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures, pursuant to provisions of Title 18, United States Code, Section 2428.

2.     From his engagement in violations alleged in Counts One and Two of this Indictment, the defendant, **JONATHAN TYLER PRIVE**, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2428, all of his interest in:

2

it is the intent of the United States, pursuant to Title 18, United States Code, Section 2253(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL,

_____
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
Andrew C. Searle
Assistant United States Attorney

By: _____
Carlos A.   Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

4

FORM OBD-34
APR 1991

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

JONATHAN TYLER PRIVE

## INDICTMENT

Violations:

18 U.S.C. § 2242(b)

A true bill,

_____
Foreperson

Filed in open court this 19th day

of February, 2014.

_____
Clerk

Bail $_____

AF Approval _AMG_                                          Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, JONATHAN TYLER PRIVE, and the attorney for the defendant, Jose Rodriguez, mutually agree as follows:

A.    **Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count Two of the Indictment.  Count Two charges the defendant with attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).

2.    Minimum and Maximum Penalties

Count Two is punishable by a mandatory minimum term of imprisonment of 10 years up to life, a fine of up to $250,000, a term of supervised release of at least 5 years up to life, and a special assessment of $100 per felony count.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses,

Defendant's Initials _JP_



the Court may order the defendant to make restitution to any victim of the

offenses, or to the community, as set forth below.

    3.    <u>Elements of the Offense</u>

        The defendant acknowledges understanding the nature and

elements of the offense with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Count Two are:

> <u>First:</u>    the Defendant knowingly attempted to persuade, induce, entice or coerce an individual to engage in sexual activity;
>
> <u>Second:</u>    the Defendant used the Internet or cellphone to do so;
>
> <u>Third:</u>    when the Defendant did these acts, the victim was less than 18 years old; and,
>
> <u>Fourth:</u>    one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the law of Florida.

    4.    <u>Count Dismissed</u>

        At the time of sentencing, the remaining count against the

defendant, Count One, will be dismissed pursuant to Fed. R. Crim. P.

11(c)(1)(A).

    5.    <u>No Further Charges</u>

        If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge defendant

with committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

Defendant's Initials         2



6.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. §§ 2248 and 2259, defendant agrees to make full restitution to the minor victim.

7.   Mandatory Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. § 2259, defendant agrees to make restitution to known victims of the offense for the full amount of the victims' losses as determined by the Court.  Further, pursuant to 18 U.S.C. § 3364(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

8.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted,

Defendant's Initials                     3

the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: an Acer Aspire

Defendant's Initials      4



laptop computer, serial number LUS050B13384523F592535, which was used to facilitate the criminal activity charged in the indictment.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also hereby agrees to waive all constitutional, statutory and procedural challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that promptly after accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is

Defendant's Initials                 5

omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement.  If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed

Defendant's Initials                 6

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

4.   Abandonment of Property - Computer Equipment

The United States of America and defendant hereby agree that any computer equipment as defined in 18 U.S.C. § 2256, seized from the defendant and currently in the custody and/or control of the Brevard County Sheriff's Office and Homeland Security Investigations or other appropriate agency, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. §§

Defendant's Initials                     7

2253 or 2254, and/or that the computer equipment and peripherals constitute evidence, contraband, or fruits of the crime for which he has pled guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the computer equipment and peripherals to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Federal Bureau of Investigation, or other appropriate agency, to cause the computer equipment described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that he/she is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of: an Acer Aspire laptop computer, serial number LUS050B13384523F592535.

5. <u>Sex Offender Registration and Notification</u>

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places

Defendant's Initials           8

at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

6.    Removal - Notification

The defendant has been advised and understands that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States.  Under federal law, the offense to which defendant is pleading guilty may be a removable offense. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status.  The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that may result from the defendant's guilty plea, even if the consequence is the defendant's automatic removal from the United States following completion of the defendant's sentence.



**B.   Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  The special assessment is due on the date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

    2.    Supervised Release

        The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon

Defendant's Initials        10



release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

### 3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### 4. Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

### 5. Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit

Defendant's Initials       11

reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report

Defendant's Initials           12

prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.      Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence

Defendant's Initials         13



violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is



pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

    11.   <u>Factual Basis</u>

        Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth

Defendant's Initials          15

in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

    12.   <u>Entire Agreement</u>

        This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

    13.   <u>Certification</u>

        The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _26th_ day of ~~July~~ August, 2014.

A. LEE BENTLEY, III
United States Attorney

_____
JONATHAN TYLER PRIVE
Defendant

_____
Andrew C. Searle
Assistant United States Attorney

_____
Jose Rodriguez
Attorney for Defendant

_____
Carlos A. Perez-Irizarry
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____    16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

### FACTUAL BASIS[1]

Beginning on or about November 4, 2013, and continuing through and including on or about November 5, 2013, in Brevard County, Florida, in the Middle District of Florida, and elsewhere, the defendant, JONATHAN TYLER PRIVE ("PRIVE"), used the internet, a facility and means of interstate commerce, in an attempt to persuade, induce, entice, and coerce a three year old female child ("the minor victim") to engage in sexual activity for which any person could be charged with a criminal offense under the laws of the State of Florida, that is, Lewd or Lascivious Battery, a violation of Florida State Stat. § 800.04. The minor victim is the daughter of another individual ("the other individual"). On a prior occasion in September of 2013, PRIVE and the other individual participated in the sexual abuse of the minor victim at the other individual's home in Brevard County.[2] The actions of PRIVE and the other individual came to light as a result of a joint investigation conducted by the Brevard County Sheriff's Office ("BCSO")

---

[1] The factual basis is prepared by the United States and does not include all of the facts relevant to the defendant's involvement in the crime to which the defendant is pleading guilty and other illegal activities in which the defendant may have been involved.

[2] The other individual is currently charged with federal offenses under Middle District of Florida Case No. 6:14-cr-34-ORL-28DAB.

Defendant's Initials           17

and the Cocoa Beach office of the Department of Homeland Security ("DHS"),
Homeland Security Investigations ("HSI"), which is set forth, in part and
substance, below.

In September and October of 2013, an HSI Task Force Agent acting in an
undercover capacity ("the UC agent") conducted an investigation into the other
individual which revealed that the other individual was sexually abusing the minor
victim, producing child pornography images of the minor victim, and distributing
some of these child pornography images to others, via the internet.  Agents
eventually identified the other individual's residence in Brevard County where
they ultimately arrested the other individual and executed a search warrant.
Agents also forensically examined the electronic devices seized from the other
individual's residence and gained access to his email accounts with his
permission.  A review of the other individual's electronic devices and email
accounts revealed communication between the other individual and PRIVE,
using their respective email accounts, regarding their prior sexual abuse of the
minor victim as well as their plans to continue sexually abusing the minor victim
at a date in the future.  Some of these emails are described, in substance and
part, below[3]:

On September 9, 2013, PRIVE asked the other individual: "can I see a pic
of your little one?"  The other individual responded by sending PRIVE a
photograph of the minor victim with clothing on a child's bike and stated: "Ya a G

---

[3] The portions of the factual basis that are in quotation marks are direct quotes from these emails.
Any spelling or grammatical errors in quotation marks were contained in the emails themselves.

Defendant's Initials           18

rated on lol! Tell me what u would do in your fantasy. Thereafter, PRIVE sent the
other individual the following email:

PRIVE:  "In my fantasy I'd sit on the couch with a girl on
my lap and slide my fingers into her little panties and
finger her clit while we watched cartoons. Then I'd
undress her once she was wet and wiggling her hips
and sit with my cock between her thighs and rub it up
and down her little cunt while she held the tip. Then
when the cartoon was done I'd take her to the
bedroom to play. I'd have her lick and suck on the tip
while she laid on my chest and I played with her tight
little butt. I'd use a whole bunch of lube and play with
her ass until she was loose enough to slip my pinky
inside. Then I'd finger her while she held my cock and
played with it. Want to hear more? Tell me what new
stuff you've with her in your fantasies and I'll go on."

On September 10, 2013, the email exchange continued as follows:

The other individual:  "Would luv to watch that. Tried using my pinky
to finger her and tried a vibrating toothbrush."

PRIVE:  "How did it work? How far did you get with it?

After fingering her for long enough to get her
nice and loose. I'd add another finger and
keep going while she laid on my stomach,
panting, and squirming. Then when she
couldn't take it anymore, I'd lay her on her back
and slide the head of my cock up and down her
little cunt, getting it all wet and slippery with pre
cum. I'd push the head tight against her little
cunt and shoot it inside her, filling her up."

The other individual:  "I am so hard after that! Wow!"

PRIVE:  "Glad you liked it. lol"

PRIVE:  "you thinking of taking another shot at a getting
together?"



| The other individual: | "Yes I am. I would really like to chat live about our fantasies. Wife at work and kids r at grandmas so they will not be here to bother us or keep us from our fantasies. If u do cum over you wont be sorry!" |
|---|---|
| PRIVE: | "I wont be sorry? What did you have in mind?" |
| The other individual: | "Was thinking we could fantasize and maybe jo while we talk about what we like? Maybe trade good porn you know. You would not be sorry if u cum over!" |
| The other individual: | "U would have fun 4 sure!" |
| PRIVE: | "how long are your wife and the kids gone?" |
| The other individual: | "Must be soon though cuz she wont be working very late tonight.  We r waiting 4 your response." |
| PRIVE: | "you just said "we" are waiting. Who is "we"?" |
| The other individual: | "Till about 8ish so if u came now + drive time we could have about a solid hour to play at least." |
| The other individual: | "Royal we. Remember neither of us want to do anything in our fantasies for real right? So we will fantasize another being here but no real contact. But if u cum over u wont be sorry!" |

After this PRIVE sent the other individual numerous emails requesting the

other individual's address and the other individual eventually sent PRIVE his

address which was in Brevard County.  PRIVE and the other individual then

exchanged emails agreeing to meet and provided each other with names.

PRIVE referred to himself as "John," and the other individual referred to himself



as "Mitch."

On September 10, 2013, at 6:24 p.m., PRIVE sent the other individual  an email stating: "Okay mitch. I'm on my way."      There were no further emails between them until 8:04 p.m., when the following email exchange took place

| | |
|---|---|
| The other individual: | "Hey John email me when u get home!" |
| PRIVE: | "home now." |
| The other individual: | "Man! That was so fucking hot watching u with my daughter!  Did u enjoy?" |
| PRIVE: | "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things." |
| The other individual: | "I wish we had more time too. Fri night maybe? So what do u wanna do to her with lube?" |
| The other individual: | "Dude my dick is gonna be hard for a month after seeing that!  Especially when you came all over my baby daughter fuck yeah! Use her!" |
| PRIVE: | "I'd want to try doing what I told you about in my story And I think we'd need to put down a towel or something for the grand finale. You saw how much I cum. lol" |
| The other individual: | "I love how much u cum! She may resist and cry so u may have to be ok with that but I would luv to help u fuck her!" |
| PRIVE: | "We'd be gentle of course, but yeah, it would be okay. And you may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions or talk about how you're being mean and sending him to his room all the time. lol" |

From September 11, 2013 through October 11, 2013 (the date agents

Defendant's Initials           21

arrested the other individual), PRIVE continued to discuss with the other individual the following topics in emails: (1) PRIVE's sexual abuse of the minor victim from the date described above; (2) plans to meet at the other individual's home when the other individual's wife was away; and (3) in graphic and disturbing detail their plans to engage in sexual activity with the minor victim in the their future meetings, including plans to penetrate the minor victim's vagina and anus.

On October 11, 2013, before the agents arrested the other individual, the other individual asked PRIVE to come over but PRIVE was unable to during the time-frame when the other individual's wife was away from the home.  The last emails between PRIVE and the other individual before the other individual was arrested are as follows:

PRIVE:                  "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me?"

The other individual:    "Wife came home and spoiled my fun :( After that    close call situation I don't send pics of her anymore."

After agents arrested the other individual and discovered the above-mentioned emails between PRIVE and the other individual, the UC agent, posing as the other individual, used the other individual's email account to initiate online communication with PRIVE.  On November 4, 2013, the following email exchange took place:

Defendant's Initials                 22

- PRIVE met the other individual online after the other individual responded to an online Craigslist advertisement PRIVE posted regarding bondage and sadomasochistic ("BDSM") sexual interests.

- PRIVE and the other individual exchanged emails regarding BDSM.

- PRIVE went to the other individual's home one time to continue their conversations about BDSM.

- The other individual's son and daughter (the minor victim) were at the residence when PRIVE came over.

- PRIVE and the other individual entered the other individual's bedroom with the minor victim while the other individual's son remained in the living room.

- Once inside the bedroom, the other individual lifted the child's dress, rubbed the child between her legs, and "spread her open."

- Both PRIVE and the other individual removed their penises.

- PRIVE rubbed his penis against the minor victim's vagina.

- PRIVE also placed his penis into the child's mouth and touched the child's vagina with his hand.

- PRIVE ejaculated on the minor victim's stomach and the other individual licked the semen off the victim.

- At some point, the other individual rubbed his penis in the child's vagina.

- After this, the other individual dressed the child in a white dress.

- Regarding his intentions in travelling to the other individual's residence in Brevard County on November 5, 2013, PRIVE admitted that he planned to participate in the sexual abuse of the minor victim a second time.

- He used his netbook computer to communicate with the other individual and that the computer was at his residence (later identified to be an Acer Aspire laptop computer, serial number LUS050B13384523F592535).

Defendant's Initials         26

After PRIVE made these and other statements to law enforcement, he

was arrested and agents executed a search warrant at his residence where they

seized several electronic devices, including a Kindle device labeled "Jon's

Kindle." A forensic examination of the Kindle device revealed that the following

material was contained on the device:

- Portions of the emails sent back and forth between PRIVE and the other individual's email account, including some of the emails on November 4, 2013 when the UC was posing as the other individual.

- Evidence that the computer had been used to connect to the wireless service at the McDonalds where agents observed PRIVE communicating with the UC.

- Recent search terms consistent with an interest in child pornography: "pthc 4yo 5yo 6yo 7yo 8yo 9yo" while the user of the computer visited the website "fileshut.com."

- Google map searches for the other individual's address in Brevard County.

- Five videos of child pornography that had been deleted and were located in the unallocated space on the computer.

Pursuant to a search warrant, agents also acquired email content records

from the service provider for the email account PRIVE used in the above-

described communications with the other individual and the UC. The email

content records from the service provider included above-described emails

between PRIVE and the other individual's email address.



```
 1              UNITED STATES DISTRICT COURT

 2              MIDDLE DISTRICT OF FLORIDA

 3                  ORLANDO DIVISION

 4          Docket No. 6:14-cr-33-Orl-28KRS

 5

 6    . . . . . . . . . . . . . . . ..
      UNITED STATES OF AMERICA     :
 7                                  :
                   Plaintiff       :        Orlando, Florida
 8                 v.               :        August 27, 2013
                                    :        9:33 a.m.
 9    JONATHAN TYLER PRIVE          :
                                    :
10                 Defendant        :
      . . . . . . . . . . . . . . ..
11

12

13          TRANSCRIPT OF CHANGE OF PLEA

14      BEFORE THE HONORABLE KARLA R. SPAULDING

15          UNITED STATES MAGISTRATE JUDGE

16

17    APPEARANCES:

18

19    For the Plaintiff:          Andrew Searle

20

21    For the Defendant:          Jose Rodriguez

22

23

24    Proceedings recorded by tape-recording, transcript produced

25    by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S
 2            THE DEPUTY CLERK:  Case number
 3   6:14-CR-33-Orl-28KRS, United States of America v. Jonathan
 4   Tyler Prive.
 5        Counsel, please state your appearances for the record.
 6            MR. SEARLE:  Good morning, Your Honor.  For the
 7   United States, Andrew Searle.
 8            THE COURT:  Good morning.
 9            MR. RODRIGUEZ:  Good morning.  Jose Rodriguez on
10   behalf of Jonathan Prive seated to by left.
11            THE COURT:  Good morning.
12        I understand Mr. Prive wishes to plead guilty to count
13   two of the indictment pursuant to a plea agreement?
14            MR. RODRIGUEZ:  That's correct, Your Honor.
15            THE COURT:  All right.  Sir, I'm not the judge who
16   will sentence you if you plead guilty.  I'm a magistrate
17   judge.  I can conduct a guilty plea proceeding with your
18   permission.  I have a document signed by you indicating that
19   you agree to let me do that.  Is that right?
20            THE DEFENDANT:  That's right, Your Honor.
21            THE COURT:  What I'm going to do is have you
22   placed under oath and ask you some questions.  The first
23   group of questions will be designed to make sure you
24   understand what the proceeding is about.  Then I'll talk to
25   you about what the government would have to prove before you
```

1    could be found guilty of the charge to which you wish to

2    plead guilty.  We will go over the penalties you face and

3    the rights you lose if you plead guilty.  I'll also talk

4    about the promises in the plea agreement.  At the end I'm

5    going to ask you about what you did to make sure your

6    conduct violates the crimes for which you wish to plead

7    guilty.

8         Because you will be under oath, if anything you tell me

9    is not completely truthful, you could be separately

10    prosecuted for perjury or making a false statement.  And

11    anything you tell me here today could be used against you in

12    that prosecution.  So if you do not understand something I

13    ask, please let me know.  I'll try to ask it more clearly.

14         Your lawyer will be here throughout the proceeding.

15    You can speak to him privately at any time.

16         We make a record of what occurs through a digital

17    recording which is the reason for the microphones, so if

18    you'll continue to answer my questions out loud rather than

19    nodding or shaking your head, we'll capture your answers.

20         Do you have any questions before I go further?

21            THE DEFENDANT:  Not at this time, Your Honor.

22            THE COURT:  All right.  You do not need to stand

23    but, raise your right hand; Mr. Jackson will place you under

24    oath.

25               (Defendant sworn)

1          THE DEFENDANT:  I do.

2          THE DEPUTY CLERK:  Please state your name for the

3     record.

4          THE DEFENDANT:  Jonathan Tyler Prive.

5          THE COURT:  Mr. Prive, have you ever been known by

6     any other name?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  How old are you, sir?

9          THE DEFENDANT:  26, Your Honor.

10         THE COURT:  How far did you go in school?

11         THE DEFENDANT:  Some college, no finishing.

12         THE COURT:  You read, speak and understand

13    English?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Are you a citizen of the United

16    States?

17         THE DEFENDANT:  Yes, I am.

18         THE COURT:  The next questions are the ones to

19    make sure you're thinking clearly today.  First, have you

20    ever been under the care of a psychiatrist or a

21    psychologist?

22         THE DEFENDANT:  No, ma'am.

23         THE COURT:  Are you concurrently taking medicine

24    of any kind?

25         THE DEFENDANT:  No, I'm not.

```
 1              THE COURT:  In the last two days have you had any

 2    drugs, alcohol or medicine including anything over the

 3    counter like aspirin?

 4              THE DEFENDANT:  No.

 5              THE COURT:  Is there anything interfering with

 6    your ability to think clearly today?

 7              THE DEFENDANT:  No, ma'am.

 8              THE COURT:  All right.  I want to talk to you next

 9    about the charge you propose to plead guilty to.  First,

10    have you had a chance to review the whole indictment with

11    your attorney?

12              THE DEFENDANT:  I have, Your Honor.

13              THE COURT:  Count two alleges that beginning on or

14    about November 4 of 2013 and continuing through and

15    including on or about November 5 of 2013, in Brevard County,

16    Florida, in the Middle District of Florida and elsewhere,

17    that you using a facility and means of interstate commerce,

18    that is the Internet and the cell phone, did knowingly

19    attempt to persuade, entice, and coerce an individual who

20    had not attained the age of 18 years to engage in sexual

21    activity for which any person could be charged with a

22    criminal offense under laws of the State of Florida, that is

23    lewd or lascivious molestation and conduct, violations of

24    section 800.04, Florida statutes, and sexual battery, a

25    violation of section 794.011, Florida statutes.  That's
```

1    violation of Title 18 United States Code section 2422(b).

2         Before you could be found guilty of that offense, the

3    United States would have to prove beyond a reasonable doubt

4    that you knowingly attempted to persuade, induce, entice or

5    coerce an individual to engage in sexual activity.

6         Knowingly means you did it voluntarily, no one forced

7    you to do it.  They would have to prove that you used the

8    Internet or cell phone to do that.  That when you did these

9    acts the victim was less than 18 years old, and that one or

10   more of the individuals engaging in the sexual activity

11   could have been charged with a criminal offense under the

12   law of Florida.

13        You should know that the law in this circuit, the law

14   that governs this Court, says that the attempt to persuade,

15   induce, entice or coerce can be through what we call a

16   third-party intermediary, an adult who has some control over

17   the victim, doesn't have to be directly with the victim of

18   the offense.  Do you agree with that, Mr. Rodriguez.

19             MR. RODRIGUEZ:  Yes, that's the case law in this

20   circuit.

21             THE COURT:  Do you understand what would have to

22   be proved before you could be found guilty of that charge?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  You have the right to have the full

25   indictment read.  I'm happy to read the rest of it to you or

1   you could waive or give up the reading if you've already

2   been through it.  Would you like me to read the rest of the

3   indictment for you?

4          THE DEFENDANT:  At this time I waive that reading,

5   Your Honor.

6          THE COURT:  All right.  Thank you.

7       I just want to get these Florida statutes up so I can

8   reference them if I need to.

9       Have you had enough time to talk with your attorney

10   about the charges and the forfeiture allegation in the

11   indictment?

12          THE DEFENDANT:  Yes, Your Honor, I have.

13          THE COURT:  Are you satisfied with his services

14   representing you in this case?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Mr. Rodriguez, any question as to your

17   client's competency?

18          MR. RODRIGUEZ:  No, Your Honor.

19          THE COURT:  Any from the United States?

20          MR. SEARLE:  No, Your Honor.

21          THE COURT:  Mr. Prive, I find you are competent

22   which simply means able under the law to plead guilty if you

23   want to plead guilty, but you don't have to plead guilty.

24       I have a number of things I need to talk with you about

25   yet so if at any point you decide you do not want to plead

1    guilty, let me know, I'll stop this proceeding and the case

2    will go on as previously scheduled.

3          The next thing I want to talk to you about is the

4    reason you're proposing to plead guilty.

5          First, has anyone done anything you think is wrong or

6    unfair, threatened you in any way to get you to plead guilty

7    to this charge?

8                THE DEFENDANT:  No, Your Honor.

9                THE COURT:  Do you want to plead guilty because

10   you committed the crime or for some other reason?

11               THE DEFENDANT:  Because I committed the crime,

12   Your Honor.

13               THE COURT:  I have a document entitled, "Plea

14   Agreement."  I know you've seen it, but I'm going to ask

15   Mr. Jackson to hand it to you.  I just want to make sure

16   that is your plea agreement, that you have initialed every

17   page and any changes and signed it at the end.

18         Is that your plea agreement, Mr. Prive?

19               THE DEFENDANT:  Yes, Your Honor, it is.

20               THE COURT:  Is that the plea agreement of the

21   United States?

22               MR. SEARLE:  Yes, Your Honor.

23               THE COURT:  None of the judges of the court helped

24   to write the plea agreement, so it will be up to Judge

25   Antoon, who's the judge who will sentence you, to decide

1   whether or not to accept the terms of the plea agreement.

2       Did you read the plea agreement all the way through

3   before you signed it?

4           THE DEFENDANT:  I did.

5           THE COURT:  Did you talk to your lawyer about it

6   before you signed it?

7           THE DEFENDANT:  I did.

8           THE COURT:  Do you believe you understand the plea

9   agreement?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  I'm not going to read the whole

12  document then, but I am going to go over the promises you

13  make to the United States and the promises the United States

14  makes to you.

15      When I'm done I'm going to ask you to think if there

16  are any other promises that didn't get written in the plea

17  agreement.

18      You agree to plead guilty to count two of the

19  indictment which is the attempted enticement of a minor to

20  engage in sexual activity that we talked about just a moment

21  ago.  If you are convicted of that offense you face a

22  mandatory minimum term of 10 years in jail up to the rest of

23  your life in jail, a fine of up to $250,000, a term of

24  supervised release of at least five years up to the rest of

25  your life and you would be required to pay a special

1   assessment of $100 at the time of sentencing.

2        In addition, the Court can order you to pay restitution

3   to the victim of the offense and you do under the plea

4   agreement agree to make full restitution to the minor

5   victim.  That amount would be determined at the time of

6   sentencing.

7        You also agree that if the victim's losses are not

8   ascertainable before the sentencing that you wouldn't oppose

9   bifurcation or a two-part sentencing hearing where

10  punishment might be decided at a time different from the

11  amount of restitution would be determined.

12       At the time of sentencing the United States agrees to

13  dismiss the remaining counts which is count one against you.

14  And if the Court accepts the plea agreement the United

15  States Attorney's Office for the Middle District of Florida

16  agrees not to charge you with committing any other federal

17  crime known to that office at the time you signed the plea

18  agreement that relates to the conduct underlying the

19  indictment and the plea agreement.

20       Judge Antoon is going to look at something called the

21  sentencing guidelines to help to decide what sentence you

22  should receive in this case.  He's required to look at the

23  guidelines.  He's not required to impose a sentence within

24  the guideline range.  However, on page 3 of the plea

25  agreement the United States indicates that it will recommend

1   that you be sentenced within the applicable guideline range

2   as determined by the Court.

3        Then there are some recommendations about how the

4   guideline should be computed starting at the bottom of

5   page 3.  It says, in the event there's no information

6   received suggesting this recommendation should not be made,

7   the United States will not oppose your request that you

8   receive a two level subtraction or downward adjustment in

9   the guidelines for acceptance of responsibility.  And then

10  over on page 4 if your offense level under the guidelines

11  before that two level -- first two level reduction is 16 or

12  higher, and you otherwise qualify including complying with

13  all the provisions of the plea agreement, then the United

14  States agrees to file a motion to get you a third level

15  subtraction or downward adjustment for acceptance of

16  responsibility.

17       Whether you qualify for that third level adjustment is

18  a decision made by the United States Attorney's Office not

19  by the Court.  So you agree if the U.S. attorney does not

20  file the motion for a third level reduction, you can't

21  challenge that decision in this court or any other court.

22  Also, those are just recommendations.  So if the judge does

23  not accept them you could not withdraw your guilty plea for

24  that reason.

25       Bottom of page 4 and continuing, you agree to forfeit

1   or give up to the United States money or property gained

2   during the offense or used during the offense.  This

3   specifically includes an Acer Aspire laptop computer which

4   was used to facilitate the criminal activity charged in the

5   indictment.

6       No cell phone forfeiture here, Mr. Searle?

7       MR. SEARLE:  No, Your Honor.

8       THE COURT:  Okay.  An argument could be made that

9   by taking property from you and then by sentencing you in

10  the case that that violates some laws and Constitutional

11  protections.  Under the plea agreement you are agreeing that

12  you're not going to argue that the forfeiture violates any

13  of your laws or Constitutional rights.

14      Have you had a chance to talk to Mr. Rodriguez about

15  what you're giving up there?

16      THE DEFENDANT:  I have, Your Honor.

17      THE COURT:  Are those rights you're willing to

18  give up?

19      THE DEFENDANT:  Yes, Your Honor.

20      THE COURT:  Bottom of page 7 and continuing, you

21  agree that the computer equipment that was seized from you

22  and is now in the custody of law enforcement was properly

23  seized and is subject to forfeiture and basically what that

24  means is you won't come back at a later point and argue that

25  the Acer Aspire laptop computer should not be seized and

1    cannot be kept or destroyed by law enforcement.

2        Page 8 notifies you that if you are convicted of this

3    offense, then you will be required to comply with the Sex

4    Offender Registration and Notification Act which is a

5    federal law that we sometimes refer to as SORNA.   It

6    requires that you register and keep your registration

7    current in the place where you live, the place where you

8    work, and if you're a student, the place where you are in

9    school.

10       Failure to keep -- to register and keep your

11   registration current could subject you to another felony

12   offense.

13       Turning over to the bottom of page 11 there's a section

14   of the plea agreement that talks about financial disclosure

15   that I want to review with you.

16       I told you in order to or at least as a prerequisite

17   for the United States Attorney's Office to file a motion to

18   get you to the third level subtraction for acceptance of

19   responsibility, you had to comply with all the requirements

20   of the plea agreement, but this is one of the specific

21   sections that they point out in that paragraph.   Under the

22   section you agree to complete and submit to the United

23   States Attorney's Office within 30 days of signing the plea

24   agreement a truthful affidavit reflecting your financial

25   condition.

1    You agree to sign any documents you're asked to sign so

2    that the U.S. Attorney's' office can get information from

3    third parties to determine what money or property you may

4    hold or they may hold on your behalf.

5    You agree to let the U.S. Attorney's' office obtain

6    your tax returns for the last five years, obtain a current

7    credit report for you, and you also agree that the United

8    States Attorney's Office and the U.S. Probation Office can

9    share that financial information for purposes of doing their

10   respective jobs.

11   Bottom of page 13, top of page 14, talks about your

12   right to appeal from a mistake in your sentence.  And I want

13   to review that with you.  First, let me tell you that if you

14   plead guilty you are admitting for all time that you

15   committed the crime.  You give up any defenses or excuses

16   you may have and you give up any motions your lawyer has

17   filed or you have talked with him about filing and you give

18   up your right to come back to that court or go to another

19   court later on and argue that you should not have been found

20   guilty.

21   The right to come back to this court or go to another

22   court is called the right to appeal.  So if you plead guilty

23   you have no right to appeal from the finding that you are

24   guilty.

25   If you think the judge makes a mistake in the sentence

1    you receive, though, you usually do have the right to appeal

2    from that to go to the next higher court and ask that court

3    to correct a mistake.  Under the plea agreement you're

4    giving up some of your rights to take a direct appeal from

5    your sentence.  You can only appeal if the sentence is above

6    the guideline range as determined by the court.  If the

7    sentence is more than the maximum permitted by the law or if

8    the sentence violates the Eighth Amendment to the

9    Constitution, which is your protection against cruel and

10   unusual punishment, in addition, however, if the United

11   States appeals from your sentence, then you could appeal for

12   any reason.

13          Do you understand how that limits your right to appeal

14   from a mistake in your sentence?

15               THE DEFENDANT:  Yes, I do.

16               THE COURT:  And is that right you're willing to

17   give up?

18               THE DEFENDANT:  Yes, that is.

19               THE COURT:  The plea agreement tells you on

20   page 14 that it only binds the office of the United States

21   Attorney for the Middle District of Florida, not other

22   prosecutors, but the U.S. attorney agrees to bring your

23   cooperation, if any, to the attention of others if they're

24   asked to do that.

25          Those are all the promises written in the plea

1    agreement.  Do you believe that anyone has made you any

2    other promises about what sentence you will receive or

3    anything else that will occur in exchange for your plea of

4    guilty?

5           THE DEFENDANT:  They have not said anything else,

6    Your Honor.

7           THE COURT:  Mr. Rodriguez, anything in the nature

8    of plea negotiations that didn't get incorporated in this

9    document that you need to put on the record?

10          MR. RODRIGUEZ:  No, not in terms of anything

11   negotiated, but still potentially cooperation going on but

12   other -- nothing that needs to be...

13          THE COURT:  Is that correct, Mr. Searle?

14          MR. SEARLE:  Yes, Your Honor.

15          THE COURT:  Okay.  Mr. Prive, we've talked a

16   little about the sentencing guidelines.  Have you and your

17   attorney talked about how the guidelines might apply in this

18   case?

19          THE DEFENDANT:  At length, Your Honor.

20          THE COURT:  I can't tell you for sure what the

21   guideline range will be because I don't have all the

22   information I need to do that.  If you plead guilty the

23   Court's probation office will conduct an investigation

24   (inaudible) what occurred here, your role in the offense,

25   whether you had any prior criminal history, whether you

1   accepted responsibility, things like that and they'll

2   prepare a written report.

3        You and your attorney will receive a copy of the report

4   before sentencing, so will the attorney for the United

5   States.  If there's anything in the report you think is not

6   correct, Mr. Rodriguez will make an objection.  If the

7   objection is not worked out before the sentencing, then

8   Judge Antoon will hold a hearing.  He will rule on the

9   objections.  Only at the point the report is done and the

10  objections are ruled on will there be enough information to

11  know for sure what the sentencing guideline range is.

12       Mr. Rodriguez is a very experienced criminal defense

13  attorney.  He's given you his best estimate of the guideline

14  range, but he can't know for sure until the report's done

15  and the objections are ruled on.  So it's important for you

16  to understand that in the sentencing guideline range or the

17  sentence is something different than you expect it to be,

18  you would not be allowed to withdraw your guilty plea for

19  that reason.

20       I also want to caution you that if you find out what

21  the sentencing guideline range is for anyone else involved

22  in this offense or for others charged with similar crimes,

23  you can't assume you can calculate your own guideline based

24  upon what somebody else receives.  They're very individual

25  determinations.  Just by way of example, if two people did

```
 1    the very same thing but one of them had a more extensive
 2    criminal history than the other, the person with the more
 3    extensive criminal history is almost always going to have a
 4    higher sentencing guideline.  So that's a long way around of
 5    saying you can't know for sure today what the sentencing
 6    guideline range is and you wouldn't be allowed to withdraw
 7    your guilty plea if it turns out to be different than what
 8    you expect.  Do you understand that?
 9              THE DEFENDANT:  I understand, Your Honor.
10              THE COURT:  We don't have parole in the federal
11    prison system any more.  That used to be kind of an early
12    release program.  Now if you're sentenced to a term in jail
13    you will serve almost all if not all of any term of
14    imprisonment imposed.
15         I mentioned supervised release as part of a possible
16    sentence.  That's time you serve under the supervision of
17    the court's probation office after getting out of jail.
18    There will be things you had to do and things you could not
19    do as part of your supervised release.  If you violated a
20    condition of supervised release your supervised release
21    could be taken away.  You could be sent back to jail to
22    serve the term of supervised release, some or all of it, 'in
23    addition to the time you served on the original sentence.
24         In addition, the Court could require you to contribute
25    financially to the cost of your supervision if you had the
```

1    money to do that.

2        You should know that in sexual offender cases at the

3    end of any criminal term of imprisonment there is sometimes

4    an evaluation to determine whether the defendant would be a

5    danger to the community if released.  If it was determined

6    that you would be a danger to the community if released,

7    then there may be subsequent civil commitment proceedings

8    that follow.

9        We already talked about SORNA registration.

10        You'll also be required to cooperate in the collection

11    of a DNA sample if that becomes required under the law.

12        Mr. Searle, any penalty applicable to Mr. Prive that

13    I've overlooked?

14           MR. SEARLE:  No, Your Honor.

15           THE COURT:  All right.  Can you think of any,

16    Mr. Rodriguez?

17           MR. RODRIGUEZ:  No, Your Honor.

18           THE COURT:  Mr. Prive, do you understand all the

19    possible penalties that apply if you plead guilty to this

20    charge?

21           THE DEFENDANT:  I understand, Your Honor.

22           THE COURT:  I need to tell you next about the

23    rights you give up by pleading guilty.  You do have the

24    right to a trial before a jury composed of 12 people.

25    During the trial you would be presumed to be innocent.  The

1   United States would have to prove that you were guilty

2   beyond a reasonable doubt.  You wouldn't have to prove

3   anything.

4        During the trial the witnesses would have to come into

5   court and testify in front of you.  Your lawyer could ask

6   them questions and he could ask the judge to keep out all or

7   parts of anything the witnesses said and all or parts of any

8   other evidence offered against you.

9        You would also have the right to require witnesses and

10  evidence to be brought into Court and be presented to the

11  jury on your behalf.

12       During the trial you could testify, talk to the jury

13  under oath if you wanted to, but you would have the right

14  not to testify.  Neither the judge nor the jury could decide

15  you did anything wrong based on your decision not to

16  testify.  That's your right against self-incrimination.  It

17  gives the absolute right to remain silent.

18       If you plead guilty and the district judge accepts your

19  plea, do you understand there will be no trial, you will

20  give up all these rights I've talked about including your

21  right to remain silent and the judge will find you guilty

22  based upon your guilty plea.

23            THE DEFENDANT:  I understand, Your Honor.

24            THE COURT:  This is a felony offense, so if you

25  are convicted you will lose your civil rights.  Those

1    include but not are not limited to the right to vote, to

2    keep and bear firearms, to hold public office and to serve

3    on a jury.

4        There is a right you do not give up by pleading guilty

5    and that's the right to have a lawyer represent you in this

6    case.

7        If you decide to go to trial, Mr. Rodriguez is going to

8    represent you all the way through the trial and at every

9    other part of the case.

10       If you decide to plead guilty, he's going to represent

11   you all the way through the sentencing.

12       If you think the judge makes a mistake in the sentence

13   you receive and you want to appeal it, the Court would

14   appoint an attorney to represent you at no cost to you for

15   the direct appeal if you couldn't afford to hire one,

16   remembering though there are some limits on the right to

17   appeal in the plea agreement.

18       I've talked about many things.  Have you had any -- do

19   you have any questions about anything I have talked about?

20           THE DEFENDANT:  Not at this time, Your Honor.

21           THE COURT:  Any questions about anything in the

22   plea agreement that I didn't go over that you would like me

23   to review?

24           THE DEFENDANT:  I don't have anything, Your Honor.

25           THE COURT:  All right.  Tell me what it is that

1    you did that makes you guilty of the charge in count two.

2         THE DEFENDANT:  On or about the dates of

3    November 4th and November 5th of 2013 I used the Internet to

4    communicate with an individual in an attempt to arrange a

5    sexual encounter with an individual who had not attained the

6    age of 18 years and doing so violated the law that I'm being

7    accused of.

8         THE COURT:  What is it that you were trying to --

9    what kind of sexual activity were you trying to arrange?  It

10   has to be such that it would constitute lewd or lascivious

11   conduct or sexual battery under the Florida statutes.

12        THE DEFENDANT:  My attempt was to arrange an

13   activity with a minor including touching of the genitalia

14   and the vagina.

15        THE COURT:  Some of the state statutes use

16   different ages for the victim.  How old was the victim?

17        THE DEFENDANT:  Under the age of 12, Your Honor.

18        THE COURT:  How old was the victim?

19        THE DEFENDANT:  Three years old, Your Honor.

20        THE COURT:  Factual basis from the -- well, first

21   anybody force you to do that?

22        THE DEFENDANT:  No, Your Honor.

23        THE COURT:  You did it voluntarily?

24        THE DEFENDANT:  Yes, Your Honor.

25        THE COURT:  Factual basis from the United States?

```
1            MR. SEARLE:  Your Honor, in this case the United

2   States would be able to prove beyond a reasonable doubt the

3   factual basis that's attached to the plea agreement, pages

4   17 through 27, specifically on or about the dates of

5   November 4, 2013, continuing through and including on or

6   about November 5th, 2013, in Brevard County, Florida, in the

7   Middle District of Florida and elsewhere that the defendant

8   used the Internet to communicate with an individual who he

9   believed to be the father of the minor victim in this case

10  and in those communications he arranged to meet the child

11  and engage in illegal sexual contact -- conduct with the

12  child.  He actually went to the location where the child was

13  living -- where the child resided and brought lubricant with

14  him which was recovered from him when he arrived at that

15  location and from their proceeded to make a lengthy

16  confession to the events.

17            THE COURT:  And some of the contact with the

18  person the defendant believed to be the father of the minor

19  victim was done via computer over the Internet?

20            MR. SEARLE:  That is correct, Your Honor.

21            THE COURT:  All right.  Mr. Prive, starting on

22  page 17 and continuing through page 27 of the plea

23  agreement, there is a statement of the facts the United

24  States says it could prove were the case to go to trial.  I

25  need to know whether these facts are true.
```

1            THE DEFENDANT:  Yes, Your Honor, the facts

2   presented on those pages are true.

3            THE COURT:  All right.  Well, I find based on what

4   you tell me and the facts the United States says it could

5   prove, that the facts are sufficient to allow you to plead

6   guilty if you still want to do that.

7       I told you when we started you did not have to plead

8   guilty.  Now we are getting close to the time where I'm

9   going to ask you what you'd like to do.

10      First, though, is there anything you want to tell me or

11  ask me about your decision to plead guilty that we have not

12  talked about?

13           THE DEFENDANT:  No, Your Honor.

14           THE COURT:  Is there anything you told me under

15  oath that you would like to change because you think it

16  might not have been completely truthful?

17           THE DEFENDANT:  No, Your Honor.

18           THE COURT:  Have you had any problem hearing or

19  understanding me?

20           THE DEFENDANT:  None, Your Honor.

21           THE COURT:  Has my coughing fit interfered with

22  your ability to hear or understand during that part where I

23  was coughing?

24           THE DEFENDANT:  No, Your Honor.

25           THE COURT:  All right.  Do you want to talk to

1    your attorney further before I ask you how you would like to

2    plead?

3              THE DEFENDANT:  No, Your Honor.

4              THE COURT:  Does the representative victim wish to

5    be heard today?

6              MR. SEARLE:  Not today, Your Honor.

7              THE COURT:  All right.  All right.

8        Mr. Prive, how do you plead to the charge in count two

9    of the indictment?

10             THE DEFENDANT:  The charge of count two I plead

11   guilty.

12             THE COURT:  Are you freely and voluntarily

13   entering this plea of guilty?

14             THE DEFENDANT:  I am, Your Honor.

15             THE COURT:  I determine that the this plea of

16   guilty is knowingly, intelligently and voluntarily made and

17   it's not the result of force or threats or promises except

18   for the promises contained in the plea agreement.

19        I will recommend that Judge Antoon accept both your

20   guilty plea and the plea agreement.

21        Sentencing will be at least 75 days from today usually

22   because that's how long it takes to do the presentence

23   investigation.  I don't have the date for you but

24   Mr. Rodriguez will let you know when it's set and he'll

25   explain the presentence process to you.

```
 1        What else can we take care of today for the United
 2   States?
 3            MR. SEARLE:  Nothing further, Your Honor.  Thank
 4   you.
 5            THE COURT:  For defense?
 6            MR. RODRIGUEZ:  Nothing further.
 7            THE COURT:  Thank you very much.
 8        We're in recess.
 9                C E R T I F I C A T E
10        I certify that the foregoing is a correct
11   transcript from the record of proceedings in the
12   above-entitled matter.
13
14   s\Sandra K. Tremel, RMR,CRR              September 22, 2014
15   Federal Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                   ORLANDO DIVISION

 3              Docket No. 6:14-cr-33

 4     . . . . . . . . . . . . . .
       UNITED STATES OF AMERICA    :
 5                                 :            Orlando, Florida
                 Plaintiff         :            April 15, 2015
 6                                 :            10:00 a.m.
                    v.             :
 7                                 :
       JONATHAN TYLER PRIVE        :
 8                                 :
                 Defendant         :
 9     . . . . . . . . . . . . . .

10                     VOLUME 1

11              TRANSCRIPT OF SENTENCING
         BEFORE THE HONORABLE JOHN ANTOON, II
12            UNITED STATES DISTRICT JUDGE

13

14     APPEARANCES:

15

16     For the Plaintiff:  Andrew Searle

17

18     For the Defendant:  Daniel Broderson

19

20
       Court Reporter:      Sandra K. Tremel, RMR/CRR
21                          407-288-6343, sandy.tremel@gmail.com

22

23

24     Proceedings recorded by mechanical stenography, transcript

25     produced by computer-aided transcription.
```

1          P R O C E E D I N G S

2          THE DEPUTY CLERK:  This is the case of United

3  States of America v. Jonathan Tyler Prive, case number

4  6:14-CR-33.

5      Will counsel please state their appearances for the

6  record.

7          MR. SEARLE:  Good morning, Your Honor.  Andrew

8  Searle for the United States.  Sitting with me is Agent Mike

9  Spadafora.

10          MR. BRODERSON:  Good morning, Your Honor.  Daniel

11  Broderson on behalf of Jonathan Prive, who's seated to my

12  left.

13          THE COURT:  Mr. Prive, would you stand, please,

14  and raise your right hand.

15                  (Defendant sworn)

16          THE DEFENDANT:  I do.

17          THE COURT:  What is your full name, sir?

18          THE DEFENDANT:  Jonathan Tyler Prive.

19          THE COURT:  And Mr. Prive, have you had any pills,

20  drugs, medication or alcohol within the past 48 hours?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Have you been under the care of

23  psychiatrist or a psychologist for a mental or emotional

24  disorder in the past?

25          THE DEFENDANT:  No, sir.

1    THE COURT:  Do you believe that you suffer from

2 such a disorder now?

3    THE DEFENDANT:  No, sir.

4    THE COURT:  Are you thinking clearly and

5 exercising your best judgment this morning?

6    THE DEFENDANT:  Yes, sir.

7    THE COURT:  Thank you, sir.

8  You may be seated.

9  Mr. Prive, on August 27, 2014, you entered a plea of

10 guilty to Count 2 of the indictment charging you with an

11 attempted enticement of a minor in violation of 18, United

12 States Code, Section 2422(b).  I have previously accepted

13 your guilty plea and adjudged you guilty of that offense.

14  We have now reached that stage in the proceedings where

15 I need to ask questions of you, your attorney, and counsel

16 for the government.  First, have you had an opportunity to

17 read and discuss with Mr. Broderson the presentence report?

18    THE DEFENDANT:  Yes, sir, Your Honor.

19    THE COURT:  Do you have any objections as to the

20 factual accuracy of the report?

21    MR. BRODERSON:  Your Honor, may I?

22    THE COURT:  Yes, sir.

23    MR. BRODERSON:  Judge, first of all, for the

24 record, I need to make a statement as it relates to the

25 motion to withdraw that I previously filed, understanding

1    that it's been denied by the Court.  But Mr. Prive has a

2    motion that he's been insisting be filed in a case related

3    to the constitutionality of the statute, which ethically I

4    believe should not be filed, but he -- and that's the reason

5    why I filed my motion to withdraw, but he insists and he

6    wanted me to raise that issue with the Court prior to

7    sentencing, that he wanted to be able to file the motion on

8    his own since I would not file it for him.

9           THE COURT:  Has the government seen the motion?

10          MR. SEARLE:  No, Your Honor.

11          THE COURT:  Is it written?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Government wish to be heard?

14          MR. SEARLE:  Your Honor, I think we have been here

15   before with regard to the defendant's prior counsel.  We had

16   a hearing where the defendant made allegations that the

17   Court ultimately determined to be untrue with regard to that

18   prior counsel.  Your Honor, at this point, I think that it's

19   clear that what the defendant is doing is trying to delay

20   the sentencing based on the allegations he's made and the

21   motions he made.  I don't think that there's any -- I

22   haven't seen the motion.  To the extent that it touches upon

23   some of the things that the defendant referenced when he

24   testified at the prior hearing, I don't think there would be

25   any merit to it.

1    The case law in terms of these particular kinds of

2    offenses in the 11th Circuit is clear-cut, that the

3    defendant engaging in communication with an undercover agent

4    posing as the parent of a minor child and having discussions

5    about sexually abusing the minor child, even if it's a

6    fictitious minor child, is sufficient to satisfy the

7    statute.  So to the extent that that is what the motion

8    relates to, I don't think that there would be any merit to

9    it and I think we have to --

10    THE COURT:  Let me see what he's filed.  Or what

11    he wants to file.

12    MR. BRODERSON:  May I approach, Your Honor?

13    THE COURT:  Yes, sir.  Do you have a copy for the

14    government?

15    MR. BRODERSON:  I do not, Your Honor.  I

16    apologize.

17    THE COURT:  Ms. Darly, will you go make a copy of

18    this, please?

19    THE DEPUTY CLERK:  Yes, sir.

20    THE COURT:  I'm sorry to have to ask you to do

21    that.

22    (Pause in the proceedings.)

23    MR. SEARLE:  Your Honor, would you like the

24    government to respond?  Or address the motion?

25    THE COURT:  Yes.  First, what, if any, problem is

1  there in allowing me to address this motion when Mr. Prive

2  is represented by counsel?

3  　　　　MR. SEARLE:  Your Honor, I'm not quite sure

4  specifically what the Court is asking there.  I do know that

5  the rules of the district are that when a defendant is

6  represented by counsel he can't file pro se motions and so

7  on that basis, I think since this is a pro se motion and he

8  is being represented by counsel, there is a basis to deny

9  the motion or move forward with the sentencing on that

10  ground.

11  　　　In terms of the merits of the actual pleading, I think

12  on its face the Court can address the motion and deny it as

13  meritless.

14  　　　In terms of the constitutionality of the statute, the

15  statute has been around for a while.  I don't have any case

16  law at the top of my head where the Constitutional vagueness

17  of the statute has been interpreted, but I know the statute

18  has been construed by a number of -- in a number of circuit

19  court opinions and there's never been an instance where the

20  Court has found the statute to be unconstitutionally vague.

21  　　　In terms of the use of the Internet as an

22  instrumentality of interstate commerce that has been well

23  established in a number of different cases, specifically as

24  it relates to this particular statute but in other statutes

25  as well, and I believe it's so accepted that the 11th

1    Circuit pattern jury instructions specifically lists the

2    Internet as an instrumentality of interstate commerce and

3    gives that as a specific example of an instrumentality of

4    interstate commerce.

5        The defendant's motion also seems to focus solely on

6    the persuasion prong of the statute.  However, as the Court

7    is aware, it's not just persuasion, it's -- it would also

8    include to induce, entice or coerce an individual to engage

9    in sexual activity, and specifically the 11th Circuit

10   pattern jury instruction defines induce as to stimulate the

11   occurrence of or cause.  So I think on that basis alone,

12   whatever the defendant's arguments are, certainly the

13   statute -- that particular element of the statute was more

14   than satisfied based on the facts of this case.

15       And then, Your Honor, as far as just the specifics of

16   this particular case, I am aware of case law in the 11th

17   Circuit specifically United States v. Morel which is at 368,

18   a federal circuit third, 1283, which is an 11th Circuit

19   opinion from 2004, and it specifically addresses the issue

20   where there was communication with an adult intermediary by

21   means of interstate commerce, and the Court held that the

22   defendant need not communicate directly with the minor.

23   It's sufficient that the defendant induce or attempt to

24   induce the minor via an adult intermediary.  And I -- I'm

25   also aware of some other cases, I don't have the cites off

1    the top of my head, where the communication was solely with

2    an undercover agent.  So I think that the motion is merely

3    grasping at straws in an attempt to delay these proceedings

4    further.  I'd also note that the motion is untimely and that

5    we're at the point where the defendant needs to be sentenced

6    and I think just based on the timeliness matter, the motion

7    should be stricken from the record.

8              THE COURT:  Mr. Broderson.

9              MR. BRODERSON:  Yes, sir.

10             THE COURT:  Do you know of any impediment in my

11   waiving the rule to address the motion -- the pro se motion?

12             MR. BRODERSON:  Your Honor, I'm not aware of any

13   such rule.  I know as Mr. Searle indicated, I know that the

14   local rules of this district preclude the filing of pro se

15   motions by represented parties.  However, I don't see any

16   reason why the Court cannot waive that rule for purposes of

17   addressing the motion in this case.

18             THE COURT:  Okay.  That's what I intend to do.

19        Do you wish to argue your motion beyond what you put in

20   writing?

21             THE DEFENDANT:  Your Honor, I only want to point

22   out that while Mr. Searle's arguments are accurate and what

23   he's just said, those are not points that are actually

24   addressed or contended by this motion.  It's not intended to

25   focus on the simple act of persuasion.  The term persuasion

1   is meant to be all inclusive of the action included in the

2   statute which is to persuade, induce, entice or coerce, and

3   that it's not in any way targeted towards arguing the

4   communication with an adult intermediary as addressed in

5   Morel either.  It's specifically targeted at the

6   jurisdictional element which is required by 12B3B in order

7   to hear this motion.

8          THE COURT:  Mr. Lopez, Morrison, Jones argument,

9   right?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  I waive the -- I waive the rule and

12  heard the argument.  I read the motion which is well stated,

13  but without merit, and it's denied.

14      Now, do you have any objections as to the factual

15  accuracy of the report?

16          MR. BRODERSON:  Your Honor, we submitted a letter

17  to the probation officer, and I believe that the factual

18  portions that we initially objected to have been resolved.

19  There are objections to the offender character -- the

20  guideline calculations.

21          THE COURT:  Right.  Now, those have been set forth

22  in the addendum.  Is there any further argument on those

23  objections?

24          MR. BRODERSON:  Your Honor, I would also like to

25  point out that in March I sent an e-mail to Mr. Salce, the

1  probation officer, raising objection to paragraph 33 of the

2  PSR, specifically the two level enhancement for use of a

3  computer on the grounds that that would constitute double

4  counting inasmuch as the use of a computer or the Internet

5  is an element of the offense and a basis for the initial

6  offense level of 28.

7      And as it pertains to each of the objections that I've

8  made to 34 and 35, under 1(b)1.3, I do not believe that they

9  fall within the definition of relevant conduct.  While I'm

10  well aware that under Chapter 6 of the guidelines the Court

11  is entitled to consider whether dismissed conduct under a

12  plea agreement constitutes relevant conduct, and if it does,

13  to use that -- utilize that to -- for the guideline score.

14  In this case, the conduct reflected in Count 1 of the

15  indictment, which is being dismissed, did not occur during

16  the commission of the offense of conviction, was not in

17  preparation for the offense of conviction, and did not -- it

18  was not in the course of attempting to avoid detection or

19  responsibility of that offense.  For those reasons, we

20  contend that it is not relevant conduct and cannot be

21  utilized to provide the enhancements set forth in paragraphs

22  34 and 35.

23      In addition, Mr. Prive contends that the conduct

24  related to Count 1 as its contained in the PSI or PSR and

25  utilized to provide a guideline score should be excluded

1    under federal rule of evidence 403 inasmuch as its probative

2    value is substantially outweighed by its prejudicial point.

3         THE COURT:  Well, let me make sure I understand.

4    There's an addition to the points scored for the age of the

5    child under relevant conduct, and the objection to including

6    the allegations that form the basis of Count 1 which has

7    been dismissed as relevant conduct.  There's also an

8    objection as to the use of the computer because I didn't

9    know that.

10        MR. BRODERSON:  Correct, Your Honor.  That was

11   raised after Mr. Salce issued the addendum, and I sent him

12   an e-mail and indicated that we object to paragraph 33 of

13   the PSR because we contend that the two level enhancement

14   for use of a computer constitutes double counting because

15   the use of a computer or the Internet is an element of the

16   offense and also provides a basis for a level of -- initial

17   offense level 28.

18        THE COURT:  Well, I want to make sure I understand

19   that argument since I haven't had time to study it as I have

20   the other arguments.

21       Wouldn't that be true with any case involving child

22   pornography that's communicated or transferred using

23   computers?

24        MR. BRODERSON:  I suppose the argument would apply

25   equally.

1          THE COURT:   The statute -- what you're saying is

2   that it's an element of the statute as well as a guideline

3   enhancement.

4          MR. BRODERSON:   Correct.   And that the use of a

5   computer or the Internet is a requirement for a conviction

6   under this particular statute, 2422(b), Title 18, and that

7   the guidelines provide an initial offense level for that is

8   28.   So therefore, then adding additional two levels for use

9   of a computer is, in essence, double counting.

10          THE COURT:   Well, it's not the same as the child

11   pornography case because I don't think that statute includes

12   an element of using mail or any facility or means of

13   interstate commerce.

14          MR. BRODERSON:   Yeah, possession of child

15   pornography would not require the use of the Internet or

16   cell phone as the element -- as the second element of this

17   particular offense requires.

18          THE COURT:   Mr. Searle, have you had a chance to

19   consider that objection?

20          MR. SEARLE:   No, Your Honor.   This is the first

21   time I'm hearing of it.   Obviously, the government concurs

22   with the calculations that the Department of Probation made

23   with regard to all of these enhancements in terms of the

24   relevant conduct.

25          THE COURT:   How can it be an enhancement if it's a

1  required element of the offense?

2         MR. SEARLE:  Well, I would argue, Your Honor, that

3  it isn't a required element of the offense.  It merely

4  states using mail or any facility or means of interstate or

5  foreign commerce.  It just so happens to be in this

6  particular case that that was the actual instrumentality of

7  interstate commerce that the defendant elected to use, but

8  it doesn't specifically say in the statute that he must use

9  a computer or the Internet.  He elected to do so in this

10  case, and I think based upon that, it's not an element of

11  the statute and it's not double counting.  It's merely the

12  means that he used to commit the offense and therefore, an

13  enhancement would apply.

14     I can certainly look into finding a specific case on

15  point that it would address this issue, however, I would

16  note that the defense has provided no such case to indicate

17  otherwise, and so I think the enhancement should apply.

18     In terms of relevant conduct argument, it's the

19  government's view that this is relevant conduct.  We're

20  talking about the same victim, the defendant believed that

21  he was communicating with the father of that child

22  throughout all of the offense conduct.

23         THE COURT:  That's another argument.  I'll come

24  back to that one.

25         MR. SEARLE:  Okay.

```
 1              THE COURT:  I'll take them one at a time.  Do you
 2    have any authority on this issue?
 3              MR. BRODERSON:  Your Honor, I do not.
 4              THE COURT:  Okay.  I think the government is
 5    correct in its analysis.  I think that although it does
 6    contemplate interstate means of sending information, it
 7    doesn't restrict those means to a computer.  In other words,
 8    if it went by mail, regular mail, it would -- the
 9    enhancement would not apply.  So that objection is
10    overruled.
11         Does the government wish to respond to the argument
12    pertaining to sexual act or sexual conduct as a -- an eight
13    level enhancement?
14              MR. SEARLE:  Yes, Your Honor.
15         As I indicated, it's our view that all of this is
16    relevant conduct.  It was the same minor victim involved.
17    The defendant believed that he was communicating with that
18    minor victim's father throughout the offense conduct.
19              THE COURT:  No, I'm talking about the -- as I
20    understand it, correct me if -- let me know if you don't
21    agree with this, with my analysis, but what I think the
22    objection is, there are two remaining objections.  The first
23    one has to do with the Court considering the defendant's
24    rape of the child which formed the basis of Count 1 and
25    scoring Count 2.  One happened in September.  The first
```

Count 1, the conduct giving rise to Count 1 arose in
September, and the enticement happened some time thereafter.

I don't know what you would advocate as being the
beginning.  I suppose you could advocate it started
immediately following the conduct when they discussed how
much -- when the defendant Mr. Glasscock talked about how
much they enjoyed the event.  But they are separate
arguments, and I want you to treat them separately.

I was asking about that, whether the -- for you to
respond just to the sex act or sex -- sexual conduct that
took place and was the basis in September and was the basis
for Count 1 being counted as relevant conduct.

MR. SEARLE:  As Mr. Broderson indicated, and I
believe the guidelines state this clearly, the Court can
consider conduct that relates to a count that's being
dismissed as relevant conduct and that's what the government
is asking the Court to do.

THE COURT:  Do me a favor.  Take the first one
out, you're not looking at them as separate, I don't think.
I want you first to address the fact that the child was
under 12.  That enhancement.

MR. SEARLE:  Okay.

THE COURT:  That's not dependent on what happened
to Count 1, is it?

MR. SEARLE:  No, Your Honor, because it was the

1  same child he was inducing in the count that he pled guilty

2  to.

3          THE COURT:  Right.  Do you have any response to

4  that, Mr. Broderson?

5          MR. BRODERSON:  No, Your Honor.

6          THE COURT:  The objection is overruled.

7     Now, let's deal with the conduct in Count 1, which I

8  think is a more difficult issue.

9          MR. SEARLE:  As I indicated, it's our view that

10  even though --

11          THE COURT:  Was it done in preparation?

12          MR. SEARLE:  I believe so, Your Honor.  I don't

13  think that the second offense would have ever existed had it

14  not been for the sexual abuse of the child preceding that.

15  I mean, that was the whole basis for law enforcement even

16  initiating any communication with the defendant was the fact

17  that they saw these e-mails where the two individuals were

18  discussing sexually abusing the child and I don't see how

19  they can be viewed as separate in this particular case.

20     In addition, Your Honor, again, and this is consistent

21  with the -- with the Court's view of the age of the child

22  enhancement, the offense that was charged in the second --

23  in the count that the defendant ultimately pled guilty to,

24  it did involve -- well, I guess the enhancement specifically

25  states in the commission of a sexual act, so I'll withdraw

1    that particular argument, but...

2          THE COURT:  Here's what 1(b)1.3 says regarding

3    relevant conduct:  "All acts and omissions committed, aided,

4    abetted, counseled, commanded, induced, procured or

5    willfully caused by the defendant that occurred during the

6    commission of the offense," so you're not arguing that.

7          MR. SEARLE:  No, Your Honor.

8          THE COURT:  In preparation for the offense, you

9    are going to argue that, so I'll pass on that.  In the

10   course of attempting to avoid detection or responsibility

11   for that offense, you're not arguing that.  So what you're

12   arguing is you're arguing that it happened in preparation.

13   Go ahead and tell me about that.

14         MR. SEARLE:  Again, Your Honor, I understand that

15   the word "preparation" indicates I guess the plan leading up

16   to the actual offense.  And I would argue that in this case

17   these two individuals had communication over the Internet,

18   discussed sexual fantasies as it related to sexually abusing

19   minor children and eventually consummated that, for lack of

20   a better word, when they sexually abused this child at

21   Mr. Glasscock's home and but for that sexual abuse,

22   everything that took place thereafter would not have

23   happened.  If the defendant had not actually sexually --

24         THE COURT:  If they hadn't met it would have never

25   happened, that's for sure.  If they hadn't met, it wouldn't

1    have happened.

2              MR. SEARLE:  So in that sense, I can't see how it

3    can't be viewed as preparation for the actual offense the

4    defendant was convicted of.

5              THE COURT:  Do you want to respond, Mr. Broderson?

6              MR. BRODERSON:  Your Honor, I can only say that

7    the guideline provision is clear that it states in the prong

8    that the government is relying on in preparation for that

9    offense, I have a hard time understanding how a sex act,

10   which is what we're talking about here, an enhancement for a

11   sex act, is somehow in preparation for a conduct involving

12   enticement which occurs some weeks or months later.  And I

13   think that's what -- in order for you to find that this sex

14   act is relevant conduct, I think you have to find that the

15   sex act is somehow in preparation for acts involving

16   enticement that occurred down the road and I simply -- I

17   would simply say that I do not think it fits.

18             THE COURT:  What does the last -- Mr. Searle, what

19   does the last phrase of the provision -- the guideline

20   provision mean?  It says, "Or the object of those acts or

21   omissions."  I don't think that's relevant to what we're

22   talking about, is it?

23             MR. SEARLE:  I'm sorry, Your Honor.  If you could

24   repeat that again.  I apologize.

25             THE COURT:  It says, "As well as all harm

1   resulting or the objects of those acts or omissions -- acts

2   or omissions."

3        MR. SEARLE:  I guess my view of that would be that

4   it would include this conduct because we're speaking of the

5   same minor victim that this defendant -- that was the object

6   of the defendant's offense.

7        I would also argue that this was a course of conduct

8   that the defendant was engaged in with respect to this

9   particular victim.  The communications continued and were

10  regular throughout and leading up to the actual

11  communications that led to his conviction for this

12  particular offense and they all related to the sexual abuse

13  of the child.

14       THE COURT:  Well, I do think that the conduct

15  obviously is related, but I can't square it with the plain

16  reading of the statute, and I sustain the defendant's

17  objection and I'll include that in a written order.

18       Now, there was one other objection that I heard you

19  ease into, Mr. Broderson, and that was a 403 argument

20  regarding the conduct being considered for purposes of

21  defendant's history and character?  Is that what I heard?

22       MR. BRODERSON:  There was additional grounds for

23  the argument that the conduct contemplated in Count 1 of the

24  indictment, which the defendant committed, being considered

25  as it relates to his sentencing on Count 2, the argument is

1  that that conduct because it relates to a dismissed count,

2  one and two, because its probative value substantially

3  outweighed by its prejudicial effect, should not be

4  considered by the Court.  But I think the Court just ruled

5  that, so there wouldn't be any additional -- there wouldn't

6  be any need to raise that argument again.

7       THE COURT:  Well, but I am going to consider it

8  and -- under 3553.

9       MR. BRODERSON:  I understand that and I would -- I

10 think you're free to.  I think you're free to.

11      THE COURT:  I'm not sure how far you intended your

12 motion to go, but to the extent it is addressed in 3553,

13 your motion is overruled.

14    As to calculating the guideline score, it's sustained.

15      MR. BRODERSON:  Thank you, Your Honor.

16      THE COURT:  Okay.

17      MR. SEARLE:  Your Honor, I do have one issue that

18 I'd like to take up with regard to the calculations.

19      THE COURT:  Yes, sir.

20      MR. SEARLE:  And this is something that I was just

21 made aware of this morning, there's a recent opinion in the

22 11th Circuit in the United States vs. Casselberry.  It is an

23 opinion that came down in February 27, 2015, it's -- the

24 cite is 594 federal appendix 612, and in it the Court found

25 that the -- that a five level enhancement for engaging in

1  pattern of activity involving prohibited sexual conduct
2  applied under guideline Section 4(b)1.5 subsection (b)(1),
3  and the conduct at issue included two Internet chats the
4  defendant had with minors in the lead up to the offense that
5  amounted to a pattern the 11th Circuit found under that
6  guideline section despite the defendant's claims that the
7  chats occurred contemporaneously with the conviction or that
8  the chats were contemporaneous with one another or that he'd
9  never been charged or convicted with a crime for those
10 chats.
11      Based upon that, Your Honor, if the 11th Circuit has
12 said that that enhancement would apply for mere chats, my
13 argument would be that this five level enhancement should
14 apply here when we're talking about the defendant engaging
15 in sexual abuse of the child.  We would argue that that
16 would be a -- engaging in a pattern of activity involving
17 prohibited sexual conduct.
18           THE COURT:  Are you familiar with the case,
19 Mr. Broderson?
20           MR. BRODERSON:  I am not, Your Honor.
21           THE COURT:  Do you have a copy for counsel?
22           MR. SEARLE:  Your Honor, I only have one copy.
23 I'll provide that to counsel.
24           THE COURT:  What's the citation?
25           MR. BRODERSON:  Your Honor, it's 594 federal

1  appendix 612.

2       THE COURT:  So it's an unpublished opinion?

3       MR. BRODERSON:  That's correct, Your Honor.

4       THE COURT:  We're going to take a recess.  It will

5  be at least 15 minutes.  I need to read the case.

6       MR. BRODERSON:  Okay.  Thank you, Your Honor.

7            (Recess)

8       THE COURT:  Mr. Salce, have you had an opportunity

9  to look at this guideline and the case that was provided by

10 Mr. Searle?  Please be seated.

11      THE PROBATION OFFICER:  I did review the

12 guideline, Your Honor.  I hadn't necessarily looked at the

13 case.  I'm just -- I was just handed that now.  To me it

14 does not look like it would apply.  I don't see that there

15 were two instances of prohibited sexual conduct that

16 occurred.

17      THE COURT:  Well, is that because you're not

18 including the instant offense that is prohibited sexual

19 conduct?

20      THE PROBATION OFFICER:  From my perspective, Your

21 Honor, I think it appears that in September of 2013, Prive

22 participated in prohibited sexual conduct with the minor

23 victim, and I think on the date of his arrest, in November,

24 he was traveling back to the residence with the intention of

25 participating in prohibited sexual conduct.  But it did not

1    take place.  So I don't think that that meets the standard

2    from my perspective.  I think the guideline states that he

3    had to engage in prohibited sexual conduct, which I don't

4    think he did on two separate occasions.

5         MR. SEARLE:  That's not what the 11th Circuit

6    found in this case, Your Honor.  They merely said that these

7    chats constituted sexual conduct, and I think they even

8    addressed the issue of where the defendant argued that one

9    of the prior instances was the actual offense that he was

10   convicted of and it said -- the 11th Circuit said even if

11   the factual predicate of this argument were true, it would

12   not make a difference if the offense of conviction qualifies

13   as prohibited sexual conduct, the pattern of activity.

14        THE COURT:  The real question, if you look at

15   subsection -- the commentary 4A, it says that prohibited

16   sexual conduct means any of the following, and it includes

17   those offenses described in 2426(b)(1)(a) and -- or B, and

18   that provision includes enticement.

19        MR. SEARLE:  That's correct, Your Honor.

20        THE COURT:  I think Mr. Salce is making a

21   distinction between the enticement and attempted enticement.

22   Is that right, Mr. Salce?

23        THE PROBATION OFFICER:  Yes, Your Honor.

24        MR. SEARLE:  But, Your Honor, my response to that

25   would be the attempt language is within the same section.

```
 1    It's within -- it's one of the offenses described within 18

 2    U.S.C., Section 2426 sub (b)(1)(a) -- sub (b)(1) big A.   In

 3    that the actual attempt language is within 2422.   In other

 4    words, the statute doesn't seem to distinguish between

 5    attempt and the completed offense.

 6         Beyond that, Your Honor, as we've discussed, the

 7    offense that was dismissed was a completed enticement which

 8    would be separate and apart from the actual sexual abuse of

 9    the child.   So notwithstanding the probation department's

10    view here, you have a completed enticement which relates to

11    the conduct that is being dismissed, but as Section 4(b)1.5

12    states, it doesn't matter whether the defendant was

13    convicted or not.   So you have a completed enticement

14    instance and then you have the actual sexual abuse of the

15    child.   So those are two prior instances right there.   And

16    that doesn't count the actual attempted enticement that the

17    defendant was convicted of.

18         THE COURT:   So you would say that the molestation

19    of the child and the enticement would constitute a pattern

20    even without the attempted enticement which is the case

21    we're here on?

22         MR. SEARLE:   That's correct, Your Honor.   And with

23    regard to the factual assertion that support that, it's

24    specifically the facts that are set forth in the PSR, not

25    referencing anything that isn't in the record.   But I think
```

```
 1   if you look at the PSR, all of that is set forth in the
 2   factual history of the case.
 3           THE COURT:  Mr. Broderson, do you wish to be
 4   heard?
 5           MR. BRODERSON:  Your Honor, initially I would have
 6   to say that because this enhancement was not included as
 7   part of the PSR in the case, I'm relatively unprepared to
 8   address the issue.  However, having looked at the subsection
 9   and hearing what Mr. Salce said, I would concur with his
10   analysis that while the act of sexual abuse against the
11   child may be an instance that can be considered, the attempt
12   -- attempted enticement which was with an undercover police
13   officer, unlike the two chats with minors in the Casselberry
14   case which were both with the minors, should not be
15   considered a pattern of sexual activity or pattern of sexual
16   conduct that provides the basis for this enhancement.
17           THE COURT:  Well, now you raise a 2255 issue.  I
18   want you to be prepared to respond to it.  I want to give
19   you an opportunity to respond to it.  I know this case is in
20   herky-jerky for a number of reasons.  It is not --
21   scheduling has not gone smoothly.  Mr. Spadafora is here
22   again from Brevard County and I appreciate that, but I think
23   we owe it to the parties and to the reviewing Court to try
24   to get it correct.  So I'm going to give you an opportunity
25   to be heard.  I didn't know about it.  I will tell you that
```

1 without prejudging it, I'll give you an opportunity to be

2 heard, but it seems to me that when you refer back to the

3 2422 that includes attempt. But I don't know that there's

4 much case law on this, so I haven't had a chance to check

5 that.

6 MR. BRODERSON: Well, Your Honor, I would argue

7 against its application in this particular case.

8 THE COURT: I know you would. But I'll give you

9 an opportunity to do that properly. If you want.

10 MR. BRODERSON: All right, Your Honor.

11 THE COURT: Is that what you're asking?

12 MR. BRODERSON: I think that would probably be the

13 best way to proceed.

14 THE COURT: I'll give Mr. Salce a chance to look

15 at it, too. I don't know that he had any notice of the --

16 MR. SEARLE: I apologize for the short notice on

17 this, Your Honor. I actually just received the case when I

18 got to court this morning, so.

19 THE COURT: Well, we've had short notice on issues

20 for both sides. This one is a little more difficult than

21 the last one.

22 Just so everybody here understands, I think

23 Mr. Spadafora spends enough time here that he does

24 understand, the Court -- the trial Court and the federal

25 system when handling criminal cases is required to

accurately calculate a guideline score. And that is
sometimes not an easy task. We have the expertise of
Mr. Salce and other members of his office who help us
interpret not just this compilation of provisions, some
cross referencing one another as we just did with relevant
conduct and now we're doing it with whether this is a
pattern where you can't just use the book, you have got to
refer back and forth to statutes. And then in addition to
that, as you've also seen today, we have case law that
interprets the guidelines. So it's very complicated, but
all of us take it seriously because we're required to do so.

In the end, the score that's calculated using the
guidelines is not necessarily the prescriptive of the
sentence that's imposed by the Court because other things
also are considered. But that does not in any way relieve
us of our obligation to accurately calculate the score. I
don't know what happens with those compilations anymore once
we've done them, but they go somewhere, and it's an evolving
body of law.

And I've not had this issue come up. Apparently,
because Mr. Searle gave me an unpublished opinion, the 11th
Circuit hasn't written much about it either, perhaps some of
the other circuits or maybe some district courts have and
we'll find that out, and I prefer to get it right given --
especially given the other complications in this case of

1   sorting out guidelines and other procedural problems that

2   we've had.

3         MR. BRODERSON:  If it helps the Court in

4   scheduling the matter, I assume that I can look at this

5   issue this week and be prepared first part of next week.

6         THE COURT:  Okay.  I'll try to do it soon.  Okay.

7   Court is in recess.  Thank you.

8       Mr. Broderson, file a written response.

9         MR. BRODERSON:  I will, Your Honor.

10      (sentencing hearing concluded at 11:51 a.m.)

11           C E R T I F I C A T E

12       I certify that the foregoing is a correct

13   transcript from the record of proceedings in the

14   above-entitled matter.

15

16   s\Sandra K. Tremel         June 19, 2015

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,    )
                             )
          Plaintiff,         )        Case Number
                             )
              v.             )        6:14-cr-33-Orl-28KRS
                             )
JONATHAN TYLER PRIVE,        )
                             )
          Defendant.         )
_____)


Volume II

Transcript of the continuation of the sentencing

before the Honorable John Antoon II

April 22, 2015; 10:30 a.m.

Orlando, Florida



Appearances:

Counsel for Plaintiff:  Andrew C. Searle

Counsel for Defendant:  Daniel N. Brodersen


        Proceedings recorded by mechanical stenography,
transcript produced by computer.
_____

                  Diane Peede, RMR, CRR
            Federal Official Court Reporter
         401 West Central Boulevard, Suite 4600
                Orlando, Florida  32801

P R O C E E D I N G S

THE COURTROOM DEPUTY:  This is the case of United
States of America versus Jonathan Tyler Prive, case number
6:14-cr-33.

Will counsel please state their appearances for the
record.

MR. SEARLE:  Good morning, Your Honor.  For the
United States, Andrew Searle.  Sitting with me is Task Force
Agent Michael Spadafora from H.S.I.

MR. BRODERSEN:  Good morning, Your Honor.  Daniel
Brodersen here on behalf of Jonathan Prive, who is seated to
my left.

THE COURT:  This is a continuation of a sentencing
hearing that began last week.  During the first part of that
hearing the government raised an objection to the scoring,
the proposed scoring of the probation office; and I gave the
government an opportunity to put their objection in writing
and gave the defendant an opportunity to respond to that.

Is there anything you wish to add?

MR. SEARLE:  No, Your Honor.  The government relies
on the Memorandum that we filed at document 93.  I think it
clearly sets forth our position as well as the authority that
supports the five-level enhancement that we're seeking.

MR. BRODERSEN:  Your Honor, if I may, the notice
that I filed was rather brief and it only indicated that it

1  was the defendant's position that the -- this was not a

2  pattern of activity involving prohibited sexual conduct in

3  this particular case because the -- I want to define what I

4  meant by that. Even though this appears to fly in the face

5  of footnote three in the Castleberry case, if you read the

6  commentary to 4B1. -- 4B1.5(b), specifically application note

7  4(a)1, it indicates that a pattern -- a prohibited sexual

8  conduct means any of the following, and then it goes on to

9  describe offenses in 18, U.S.C., 2426(b)(1)(A) or (b)(1)(B).

10  The remainder does not apply.

11        I went to 2426(b)(1)(A) and (b)(1)(B), and the

12  enticement or attempted enticement or an offense under -- or

13  offense prosecuted under 18, U.S.C., 2422 does not fall

14  within that definition. Those are chapter 117 for Title 18.

15  They're not crimes that fall under chapter 109(a), chapter

16  110 or Section 1591; and there's not, at least that I'm aware

17  of, a state law which prohibits that type of conduct that

18  could be prosecuted if it occurred within the special

19  maritime territorial jurisdiction of the United States.

20        So even though the court, the panel opinion, the

21  unpublished panel opinion in Castleberry at footnote three

22  indicates that prohibited sexual conduct includes a violation

23  of 2422, it's the defendant's position that the application

24  note is clear and that it does not include a violation of

25  2422, which is why we believe that this case does not involve

1  a pattern of activity involving prohibited sexual conduct and

2  the enhancement should not apply.

3         THE COURT:  You all don't believe in giving the

4  Court notice of your arguments, do you, on either side?

5         I wish you'd included that, Mr. Brodersen, in your

6  papers.

7         MR. BRODERSEN:  I apologize, Your Honor.

8         THE COURT:  Let me go back over what you just said.

9         MR. BRODERSEN:  Judge, you would start, I guess,

10  with application note 4A to the guideline at issue, 4B1.5.

11        THE COURT:  4A.

12        MR. BRODERSEN:  Your Honor, if it helps the Court,

13  I have copies of 2426 and 2422, which shows that it's a

14  chapter 117 crime, that I can provide to the Court.

15        THE COURT:  Give me one second, Mr. Brodersen.

16        Okay.  Let me see what you have.

17        Just so the record is clear as to why there's a

18  delay at this point, the objection that I received was to

19  what constitutes a pattern of activity.  So my focus was on

20  prohibited -- what constituted a pattern.  So let's see.

21        Any of the following.  This chapter.

22        Do you wish to respond, Mr. Searle?

23        MR. SEARLE:  Yes, Your Honor.  I believe that the

24  enhancement clearly applies.  Plain statutory construction of

25  2426(b)(1)(A) indicate -- and that particular statute is

1　found under chapter 117, and it specifically states under

2　this chapter as well as the other chapters, "Any offense

3　under this chapter," specifically referencing chapter 117.

4　　　　So although it doesn't say chapter 117, it

5　specifically states, "This chapter," referring to the chapter

6　of the U.S. Code where that statute is found.

7　　　　So I think based upon that, an offense under

8　chapter 117 would trigger the enhancement.

9　　　　Further, as I indicated in my memo, under

10　subsection (b)(1)(B) of 2426, it indicates under state law

11　for any offense consisting of conduct that would have been an

12　offense under a chapter referred to in paragraph one, if the

13　conduct had occurred and in substance in federal

14　jurisdiction.

15　　　　And as I indicated, some of the prior conduct, some

16　of the prohibited sexual conduct that triggers the

17　enhancement in this case is in fact aggravated sexual abuse

18　of a child, which would constitute a federal offense had it

19　occurred in federal jurisdiction.

20　　　　So I think under both prongs, the prohibited sexual

21　conduct in this case triggers the enhancement.

22　　　　THE COURT:  Since it's your -- I guess it's his

23　objection -- I'll give you the last word on it.

24　　　　MR. BRODERSEN:  Your Honor, I don't have anything

25　to add to what I've previously stated.

1          THE COURT:  What do you say?  It says, "This

2    chapter."  "This chapter," and then it includes the other

3    chapters.  And even if it weren't covered by -- the conduct

4    was not covered by the federal law, which I think it is, it

5    would be covered under state law.

6          MR. BRODERSEN:  I understand what the Court's

7    saying.

8          THE COURT:  Now, earlier I addressed the 403

9    objection.  I think I said that it was moot because I had

10   sustained the objection regarding the -- whether the offense

11   was involved in the commission of the sex act or sexual

12   conduct, the two-level enhancement.

13         Really, the 403 objection is without merit because,

14   really, the evidence code doesn't apply.  And as I try to

15   explain in a written order, which will accompany the judgment

16   in this case, it has to be relevant with regard to

17   consideration of the 3553 factors.

18         Are there any other -- are there any other

19   outstanding objections?

20         MR. SEARLE:  None from the government, Your Honor.

21   Thank you.

22         MR. BRODERSEN:  Not that I'm aware of, Your Honor.

23         THE COURT:  Okay.  I will go in more detail in the

24   written order that I referred to just a moment ago, but the

25   defendant's objection to an increase under U.S.S.G.

1    Section 2G1.3(b)(4)(A) is sustained.  Basically, that conduct

2    did not occur during the commission of the offense of

3    conviction nor in preparation of it.

4         I understand that this is a bit of an unusual case

5    because the defendant's contact with the child, physical

6    contact, was on one specific date, but that the defendant

7    continued to talk with the child's father to try to arrange

8    another meeting until such time as the defendant was

9    arrested.

10        I should qualify that.  At some point Mr. Spadafora

11   had taken over and communicated in pretending to be the

12   defendant, but the defendant's conversation regarding future

13   abuse continued.  But nonetheless, that's how I view the

14   application of that particular guideline provision.

15        I've already spoken to the objection as to 403.

16   The defendant objects to the increase -- the eight-level

17   increase under U.S.S.G., Section 2G1.3(b)(5) regarding an

18   offense involving a minor who's not attained the age of

19   twelve.

20        Unfortunately, this child was only three.  I

21   understand the defense's argument that at some point the act

22   wasn't -- did not reach -- the planned act did not reach

23   fruition and that at some point Mr. Spadafora intervened and

24   there was no possibility at that point of the child being the

25   victim; but the enhancement does apply to fictitious victims

1    just as well.  So it does apply, not because of the original

2    battery that took place in September, but it applies to this

3    offense of enticement, the offense for which the defendant

4    has been convicted.

5            Then the objection with regard to the use of a

6    computer, the objection generally was that the crime required

7    some interstate component, but that interstate component

8    could be much broader than the use of a computer.  It could

9    be use of mail or interstate road transportation or any

10   variety of ways other than a computer.  So I find that that

11   objection is not well taken and it is overruled.

12           For reasons that we have just discussed, I find

13   that the government's objection to the proposed guideline

14   score is well taken and that Section 4B1.5(b) should apply,

15   and that results in a -- so that objection is sustained and

16   that results in a five-level enhancement.

17           Is that correct, Mr. Salce?

18           THE PROBATION OFFICER:  Yes, Your Honor.

19           THE COURT:  Mr. Salce, could you tell me then,

20   given those rulings, what the guideline score would be?

21           THE PROBATION OFFICER:  Yes, Your Honor.  The total

22   offense level would become offense level 40.  The

23   imprisonment range is 292 months to 365 months.  That impacts

24   the fine range as well, which becomes 25,000 to 250,000.

25           THE COURT:  The Court adopts the undisputed factual

1   statements and guideline applications contained in the

2   Presentence Report.

3       I've ruled on all the objections, and based on

4   those rulings and the findings that I have adopted, I

5   determine that the advisory guidelines are a total offense

6   level of 40, criminal history category I, 292 to 365 months

7   imprisonment, five years to life supervised release, no

8   restitution, a 25,000 to $250,000 fine, a $100 special

9   assessment.

10      Is the victim or anybody on behalf of the victim

11  present in the courtroom?

12      MR. SEARLE:  No, Your Honor.  The government will

13  be speaking on behalf of the victim.

14      THE COURT:  Do you know of any reason why the Court

15  should not now proceed with imposition of sentence?

16      MR. SEARLE:  None from the government, Your Honor.

17      MR. BRODERSEN:  No, Your Honor.

18      THE COURT:  Does the defendant wish to present any

19  information in mitigation?

20      MR. BRODERSEN:  No, sir.

21      THE COURT:  Mr. Prive, you have a right to be heard

22  at this time.  You're not required to speak; but if you wish

23  to, you may.  Do you wish to speak?

24      THE DEFENDANT:  No, Your Honor.

25      THE COURT:  Okay.  Does the government wish to be

1    heard?

2          MR. SEARLE: Yes, Your Honor. Your Honor, the

3    government is asking for a guideline sentence of 365 months

4    in this case as well as a term of supervised release of life.

5          Starting with the defendant's history and

6    characteristics, after reviewing the Presentence

7    Investigation Report, it appears as though the defendant does

8    have an unremarkable history. He does have some brief

9    military service. However, that ended in a medical

10   discharge.

11         It doesn't appear as though he's under any

12   medications or had any serious drug addictions or anything

13   that would present any kind of a potential mitigation for the

14   seriousness of the offense that he did commit.

15         It appears as though he's raised by a loving mother

16   and grandmother, and there is no history of sexual abuse as a

17   child. And I think that's noteworthy, because in a lot of

18   these cases where we're dealing with an individual who

19   engaged in the sexual exploitation of a child, that is

20   something that is often pointed to as an explanation for why

21   the individual had an interest in child pornography or was

22   sexually attracted to children. That does not appear to be

23   the case here.

24         So we're left with no explanation other than the

25   fact that this defendant sought -- derived some sexual

1  gratification from the horrific sexual abuse of a three-year-
2  old child, without any further explanation.

3       I would also point out to the Court that -- and I
4  reference this, to some extent, in my memorandum -- it does
5  appear as though the defendant may not be entitled to the
6  three-level downward adjustment for acceptance of
7  responsibility based on the procedural history and the
8  actions that he's engaged in since the date of his change of
9  plea.  And that procedural history is well-known to the
10  Court, so I won't elaborate on it in too much detail.

11       But he's filed motions to withdraw his plea.  He's
12  made accusations against prior counsel, which the Court had
13  an evidentiary hearing on and heard two different sides of
14  that issue and ultimately determined that the defendant's
15  arguments were unconvincing and not consistent with what his
16  lawyer testified to.

17       He's also raised legal issues and challenges that
18  are inapplicable to this particular case, and it became quite
19  apparent throughout the proceedings that he was simply trying
20  to delay this sentencing.

21       It also from his testimony at the evidentiary
22  hearing appeared as though he was quite calculating in
23  crafting arguments that he hoped would allow him to withdraw
24  his guilty plea and, my assumption is, to further delay the
25  proceedings.

1          Nonetheless, we are going to stick by what we

2     agreed to in our Plea Agreement and not withdraw acceptance

3     of responsibility.  We don't want to further delay this any

4     more, but I do think it's troubling from the government's

5     perspective that this individual did not necessarily behave

6     the way someone who's accepted responsibility would behave.

7          In terms of the nature and circumstances of the

8     offense, we are going to rely on the Sentencing Memorandum

9     that we submitted earlier in the case, which I believe is at

10    Document 51, as well as the memo that we submitted more

11    recently in support of the five-level enhancement in terms of

12    the facts of the case.

13         The defendant engaged in the sexual abuse of a

14    child and traveled back to that child's home so that he could

15    commit that abuse again.  He brought with him lubricant,

16    which the government has to assume he intended to use to

17    penetrate the child when he returned to that home.

18         The e-mails that he engaged in with the father of

19    the child are extremely graphic, and ultimately he admitted

20    that he sexually abused the child on a prior occasion.

21    Specifically -- and I apologize for the graphic nature of

22    this, but this is what happened in this case -- the defendant

23    rubbed his penis against the minor victim's vagina, placed

24    his penis in the child's mouth, touched the child's vagina

25    with his hand, and ejaculated on the child's stomach, and he

1  did all of this while the father of the child watched and

2  eventually participated in the sexual abuse of the child.

3      Following that incident, the defendant continued to

4  engage in e-mail correspondence with the father of the child

5  and specifically stated that he wished that he had more time

6  to sexually abuse the child, and told the father that he

7  wanted to sexually abuse the child again in the future and

8  try, quote, "some other things."

9      Ultimately, as the Court is aware, the father of

10  the child was eventually arrested by law enforcement and an

11  undercover agent, Agent Spadafora, eventually assumed the

12  online identity of the father and re-initiated communication

13  with the defendant, and the defendant immediately expressed

14  an interest in meeting and sexually abusing the child a

15  second time and eventually did travel back to the child's

16  home in Brevard County or in the area of the child's home in

17  Brevard County with lubricant.

18      He was eventually arrested and admitted to law

19  enforcement that he committed the prior sexual acts on the

20  child and that it was his intent to do so again.

21      Based on everything that we know about this case,

22  but for law enforcement, the defendant -- and I don't think

23  that this is an exaggeration at all -- the defendant would

24  have certainly sexually abused that child again.  This was

25  something that he was interested in doing and intended to do

1    again, and the only reason it didn't happen is because law

2    enforcement intervened.

3          In terms of deterrence, Your Honor, I think from a

4    specific deterrence standpoint, based on the defendant's

5    conduct in this particular case, I think the high-end

6    guideline sentence that we're asking for is appropriate and

7    would specifically deter him from engaging in this conduct,

8    especially when you consider the fact that this was not a

9    one-time situation.  He was actually trying to do this again

10   and would have done so had it not been for law enforcement.

11         And from a general deterrence standpoint, I think

12   the guideline sentence would send a message to other like-

13   minded individuals that sexually abusing vulnerable victims

14   is perhaps one of the most serious offenses that you can

15   commit in the United States; and if you do so, the

16   consequences will be dire.

17         Unfortunately, despite the efforts of law

18   enforcement, we continue to see these cases far too

19   frequently in this courthouse; and I think that the sentence

20   that the government is asking for is appropriate to help to

21   deter other individuals from continuing to engage in this

22   conduct.

23         Thank you, Your Honor.

24         THE COURT:  Sometimes sentencing proceedings get

25   out of proportion as a result of the arduous task of

1   correctly calculating guideline scores, parsing words and

2   phrases, and adding and subtracting points, and in the

3   process, losing sight of the significance of the crime

4   itself.  And perhaps that has happened in this case.

5       At one point the offense was referred to as

6   "horrific," and that is not an understatement.  The crime of

7   attempted enticement is the crime I refer to, but it is

8   viewed in light of the defendant's other conduct.

9       And my job is twofold:  One, to accurately

10  calculate the guideline sentence based on an arithmetical

11  grid.  The grid itself, of course, is simple; but arriving at

12  the numbers sometimes is complicated.  And it was in this

13  case.

14      But in the end, my job is to impose a reasonable

15  sentence and that is a sentence that is sufficient, but not

16  greater than necessary, to meet the mandated goals of

17  sentencing, mandated by Congress in 18, U.S.C., Section

18  3553(a)(1) through (7).

19      Some of those factors are more important than

20  others, depending on the case.  And, certainly, that is true

21  here.

22      The nature and circumstances of the offense in

23  subsection (a)(1) is most always important, and it is here.

24  The factor weighs against a lenient sentence for the

25  defendant.

1        "Child sex crimes are among the most egregious and

2   despicable of societal criminal offenses."  That's a quote

3   from the Eleventh Circuit.

4        The victims of these kinds of crimes are,

5   unfortunately, the most vulnerable members of our society.

6   And civilization, it seems, has to be measured, to some

7   extent, by its ability to protect its young from those who

8   would abuse them.

9        The harm to the children is long-lasting.  Anybody

10  who's worked in dependency court in the state system knows

11  that.  It's plainly evident.

12       A child who is abused the way the child in this

13  case was abused will have a very difficult time forming any

14  normal or long-lasting relationships with other people, not

15  to mention the humiliation that accompanies being associated

16  with that conduct, which in today's age of instant and

17  complete access to information is more likely than not to

18  happen.

19       Also, in considering the nature of the crime,

20  although the guidelines address abuse of children under

21  twelve, and that's been counted in the guideline score, the

22  fact that this child was a toddler, really referred to as a

23  "baby" by the father, certainly makes the crime more

24  egregious.

25       Also, aggravating the defendant's crime in this

1   case are his graphic descriptions of his intended abuse and

2   the obvious resolve he had in committing it again, as charged

3   in Count Two, evident by his continuous conversation

4   regarding scheduling another session with the child, his

5   previous abuse of the child, and he had made an effort to

6   stop and buy what he referred to as "lube" before setting off

7   to have another encounter with the child.

8           The government makes a good point that but for the

9   intervention of law enforcement, there is little doubt that

10  the child would have again been tortured by this defendant.

11          The second part of subsection (a)(1) deals with the

12  history and characteristics of the defendant.  And, really,

13  but for this case, there's nothing remarkable about the

14  defendant's past.  He did serve his country for a short time

15  in the United States Marines, but -- the United States Marine

16  Corps, but he had some sleep disorder and was eventually

17  discharged from the Marines.

18          He quit high school, as I recall, to join the

19  Marines, but eventually resumed his education and engaged in

20  taking college courses.

21          He's obviously intelligent.  That's plainly clear

22  from the Court's dealings with him during these proceedings.

23          He came from a family that -- a broken home, but a

24  home that seemed stable.  There was no indication that he had

25  been abused in the past.

1          But, really, the most specific facts available

2     bearing on the defendant's characteristics are contained in

3     the discussions about his abuse and intended abuse of the

4     child victim in this case with Mr. Glascock and with Mr.

5     Spadafora taking the role of Mr. Glascock.

6          These conversations are repugnant.  It's difficult

7     to say them, to repeat them.  It's difficult to write them

8     down.  I'm not going to utter them here today; but I will

9     tell you they're in my order, something I reluctantly do.

10          I think most people who are exposed to those kinds

11     of thoughts are repulsed by them, and that's certainly true

12     with me.  But I've included them because I do think that they

13     are the best way of considering the character of this

14     defendant.

15          The statements reveal an appetite for -- an unusual

16     appetite, an extraordinarily unusual appetite for cruelty,

17     just plain meanness, really.  He no sooner had completed

18     horrible abuse of this child when he began planning to do it

19     again.

20          I've considered also under 3553(a)(1) through (7)

21     the need to avoid unwarranted sentence disparity.

22          Fortunately, we don't see too many cases like this.

23     We see a lot of child pornography cases.  We've seen a few

24     enticement cases, but this case is part of a cluster of cases

25     that are loosely related to one another.  Mr. Glascock's,

1    less loosely.  He, of course, was a main actor in this case,

2    offering his own young child up for abuse.

3         So it's sometimes difficult to compare sentences to

4    check for disparity.  I detect none in anything I've done,

5    and I detect none in the guidelines.  And because the cases

6    are loosely related, I think it's worth considering.

7         The sentence received by Mr. Glascock, who had a

8    total offense level of 43 and fell in a criminal history

9    category I, he was sentenced to life in prison.

10        Mr. Ozman, who had no dealings with this defendant

11   but dealt with Mr. Glascock, also offering his infant up for

12   abuse, he received an offense level 43 with a criminal

13   history category III and he was sentenced to 720 months in

14   prison.

15        It's not clear to me now that restitution is an

16   issue.  I'll hear from the government as to that in a moment.

17   But to the extent that it is a factor, an issue, it's not a

18   factor with regard to what an appropriate term of

19   incarceration would be.

20        Of course, all of these factors are to be

21   considered in meeting the purposes of sentencing, and those

22   are to reflect the seriousness of the offense, to promote

23   respect for the law, and to provide just punishment, to avoid

24   adequate deterrence to criminal conduct, to protect the

25   public from crimes of the defendant, to provide the defendant

1  with needed educational, vocational, medical care, other

2  correctional treatment in the most effective manner.

3       I know of no treatment that the defendant needs;

4  but with regard to those other issues, because this is a

5  serious offense and there is a need to promote respect for

6  the law and provide a just sentence, a sentence of at least

7  365 months incarceration is required.

8       The sentence is needed to deter the defendant from

9  and others from committing similar crimes. A long prison

10 term, hopefully, will serve to do that.

11      It's clear from the defendant's acts and statements

12 that the public, and particularly vulnerable children,

13 require protection from him.

14      Mr. Brodersen, would you accompany your client to

15 the lectern, please.

16      MR. BRODERSEN: Yes, Your Honor.

17      THE COURT: The Court has asked the defendant why

18 judgment should not now be pronounced; and after hearing

19 defendant's response, the Court finds no cause to the

20 contrary.

21      The defendant has waived his opportunity to be

22 heard at sentencing. The government has made a statement on

23 its behalf through the Assistant United States Attorney.

24      I've reviewed the Presentence Report. I've heard

25 about the defendant's character and his past, and I've

1    considered the advisory guidelines.

2            Pursuant to Title 18, United States Code, Sections

3    3551 and 3553, it's the judgment of the Court that the

4    defendant, Jonathan Prive, is hereby committed to the custody

5    of the Bureau of Prisons to be imprisoned for a term of 365

6    months.

7            Upon release from imprisonment, sir, you shall

8    serve a term of life on supervised release.  While on

9    supervised release, you shall comply with the standard

10   conditions adopted by the Court in the Middle District of

11   Florida.

12           In addition, you shall comply with the following

13   special conditions:  You shall participate in a mental health

14   program specializing in sexual offender treatment, and submit

15   to polygraph testing for treatment and monitoring purposes.

16   You shall follow the Probation Officer's instructions

17   regarding implementation of this directive.

18           Further, you shall contribute to the cost of such

19   treatment and polygraph examinations, not to exceed an amount

20   determined reasonable by the probation officer based on

21   ability to pay or availability of third-party payment and in

22   conformance with the Probation Office's sliding scale for

23   treatment services.

24           You shall register with the state sexual offender

25   registration agency in any state where you reside, visit, are

1 employed, carry on a vocation or are a student, as directed

2 by the probation officer.

3    The probation officer shall provide state officials

4 with all information required under Florida Sexual Predator

5 and Sexual Offender Notification and Registration Statutes in

6 Florida -- that's 943.0435 -- and Sexual Offender

7 Registration Notification Act, Title I of the Adam Walsh

8 Child Protection Safety Act of 2006, Public Law 109-248, and

9 may direct you to report to these agencies personally for

10 required additional processing, such as a photographing,

11 fingerprinting and D.N.A. collection.

12    You will have no contact with any minors, that is,

13 people under the age of 18 without written approval of your

14 probation officer; and you shall refrain from entering into

15 any areas where children frequently congregate, including

16 schools, day-care centers, theme parks, playgrounds,

17 et cetera.

18    You are prohibited from possessing, subscribing to

19 or viewing any images, video magazines, literature or other

20 material depicting children in the nude and children in

21 sexually explicit positions.

22    You shall not possess or use a computer with access

23 to any online service at any location, including employment,

24 without written approval from the probation officer.  This

25 includes access through any Internet service provider,

1  bulletin board system or public or private computer network

2  system.

3         You shall permit routine inspection of your

4  computer system, hard drives and other media storage

5  materials to confirm adherence to this condition.  This

6  inspection shall be no more intrusive than is necessary to

7  ensure compliance with this condition.

8         You shall inform your employer or other third party

9  who may be impacted by this condition of this computer-

10  related restriction and the computer inspection provision of

11  the condition.

12         You shall submit to a search of your person,

13  residence, place of business, any storage units under your

14  control, computer or vehicle conducted by the United States

15  probation officer at a reasonable time and in a reasonable

16  manner based upon reasonable suspicion of contraband or

17  evidence of a violation of condition of release.

18         You shall inform any other residents that the

19  premises may be subject to a search pursuant to this

20  condition.  Failure to submit to a search may be grounds for

21  revocation.

22         You shall be prohibited from incurring new credit

23  charges, opening additional lines of credit or obligating

24  yourself for any major purchases without approval of the

25  probation officer.

1     You shall provide the probation officer access to
2  any requested financial information.

3     Having been convicted of a qualifying felony, you
4  shall cooperate in the collection of D.N.A. as directed by
5  the probation officer.

6     The mandatory drug testing requirements of the
7  Violent Crime Control Act are waived.  However, you are
8  ordered to submit to random drug testing, not to exceed 104
9  tests per year.

10     Based on your financial status, I waive imposition
11  of a fine.

12     Are there forfeiture matters to be considered?
13     MR. SEARLE:  No, Your Honor.

14     THE COURT:  You are ordered to pay the United
15  States a special assessment of $100, which is due
16  immediately.

17     After considering the advisory sentencing
18  guidelines and all the factors identified in Title 18, United
19  States Code, Sections 3553(a)(1) through (7), I find the
20  sentence imposed is sufficient, but not greater than
21  necessary, to comply with the statutory purposes of
22  sentencing.

23     The sentence would be the same if I had sustained
24  the objections of the defendant to the proposed guideline
25  score and if I had overruled the government's objection.  A

1  sentence of less than 365 months would not be reasonable

2  under the facts of this case, in my view.

3      The Court has accepted the Plea Agreement because

4  it's satisfied the agreement adequately reflects the

5  seriousness of actual offense behavior and that accepting the

6  Plea Agreement will not undermine the statutory purposes of

7  sentencing.

8      Under the Plea Agreement, the defendant has entered

9  a plea of guilty to Count Two in return for dismissal of

10 Count One.  In accordance with the Plea Agreement, it's

11 ordered that Count One of the Indictment be dismissed.

12     The Court having pronounced sentence, does counsel

13 for the defendant or counsel for the government have any

14 objections to the sentence or the manner in which the Court

15 pronounced sentence other than those previously stated for

16 the record?

17     MR. SEARLE:  None from the government, Your Honor.

18 Thank you.

19     MR. BRODERSEN:  None other than those previously

20 stated, Your Honor.

21     THE COURT:  Mr. Prive, you are hereby remanded to

22 the custody of the United States Marshal to await designation

23 by the Bureau of Prisons.

24     To the extent permitted by your Plea Agreement, you

25 have the right to appeal from this sentence within 14 days

1  from this date.  Failure to appeal within the 14-day period

2  shall be a waiver of your right to appeal.

3    The government may file an appeal.

4    You are also advised that you are entitled to the

5  assistance of counsel in taking an appeal; and if you're

6  unable to afford a lawyer, one will be provided for you.

7    If you're unable to afford the filing fee, the

8  clerk of court will be directed to accept notice of appeal

9  without such fee.

10   Do you understand everything that's happened, sir?

11   THE DEFENDANT:  Yes.

12   THE COURT:  The Court is in recess until 1:30.

13   MR. BRODERSEN:  Thank you, Your Honor.

14   (Proceedings concluded at 11:10 a.m.)

15   - - - - - - - -

16   Reporter's Certification

17 I certify that the foregoing is a correct transcript from the

18 record of proceedings in the above-entitled matter.

19   s/Diane Peede, RMR, CRR
     Official Court Reporter

20   United States District Court
   Date:  June 24, 2015 Middle District of Florida

21

22

23

24

25

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

VS.                                          CASE NO: 6:14-cr-33-Orl-28KRS

JONATHAN TYLER PRIVE

_____

## MEMORANDUM ORDER

A grand jury returned an indictment against Defendant Jonathan Tyler Prive charging enticement of a minor (Count One) and attempted enticement of a minor (Count Two). (Indictment, Doc. 1). For reasons not apparent in the record, the Government entered into a plea agreement with Defendant providing that Defendant would plead guilty to Count Two, which charged attempted enticement, and the Government would dismiss Count One. Defendant is now before me for sentencing on Count Two, and both parties have raised issues regarding proper scoring under the United States Sentencing Guidelines ("USSG"). Defendant argues that facts underlying Count One should not be used in the scoring, and the Government argues that the total offense level should be increased under USSG § 4B1.5(b)(1) because Defendant's conduct constitutes a pattern of activity involving prohibited sexual conduct. Both arguments have merit.

## I. Background

The facts of this case are singularly shocking and tragic, suggesting that man's capacity for depravity is without limits. Unfortunately, Defendant and Michael Glascock met online as they pursued their mutual interest in sexually abusing young children. (See Plea Agreement, Doc. 27, at 18 & 26). In email communications, Glascock described to Defendant in detail how he sexually abused his three-year-old daughter. (See id. at 18-

19).   Defendant liked what he read and expressed his desire to also sexually abuse the child. (See id.).  The men then entered into a plan to fulfill Defendant's wish. (Id. at 19-21).  On September 10, 2013, that plan was executed; Defendant traveled to Glascock's house, where both men sexually abused the child. (Id. at 21 & 26).  Glascock watched as Defendant rubbed his penis against the child's vagina, placed his penis in the child's mouth, touched the child's vagina with his hand, and ejaculated on the child's stomach. (Id. at 26).

After Defendant abused the child, the men exchanged email messages expressing the gratification and pleasure they felt from inflicting the abuse. (Id. at 21).  Defendant told Glascock that he wished he had more time to abuse the child during his visit and that in the future he would like to engage in yet other forms of abuse. (Id. at 21-22).  Glascock stated that he would like to help Defendant abuse the child again in the future. (Id.).  From September 11, 2013, through October 11, 2013, Defendant continued to discuss with Glascock plans to meet again at Glascock's house when Glascock's wife was out. (Id.).  These disturbing conversations included descriptions of the violence the men intended to inflict on the child. (Id. at 22).  Eventually, the men agreed to meet on October 11, 2013, but the plan failed because Defendant could not get to Glascock's house at a time Glascock's wife was out. (Id.).

Before plans for a second encounter were in place, Glascock was arrested, and an undercover agent began participating in the conversation pretending to be Glascock. (Id.).  On November 4, 2013, the undercover agent, posing as Glascock, suggested that the next morning would be a good time for Defendant to again abuse the child. (Id. at 23).  Defendant agreed that he would come to Glascock's house the next day, stating he wanted to penetrate the child's vagina and anus. (See id.).  On the morning of November 5, 2013,

2

the undercover agent advised Defendant that Glascock's wife had left the house, and Defendant replied that he would be at Glascock's house within the hour. (Id. at 24). Defendant asked the undercover agent whether he needed to bring "lube," and the undercover agent answered that he was "about out." (Id. at 24-25). While Defendant was on his way to Glascock's house with lubricant, deputies of the Brevard County Sheriff arrested Defendant and advised him of his Miranda rights. (Id. at 25). While in the custody of the Brevard County Sheriff, Defendant made statements confirming his earlier sexual abuse of Glascock's daughter, describing various ways in which he committed the abuse. (Id. at 25-26).

On August 26, 2014, Defendant entered into a plea agreement with the Government. (See id. at 16). The Plea Agreement signed by Defendant stated that "Defendant is pleading guilty because [he] is in fact guilty. [Defendant] certifies that [he] does hereby admit that the facts set forth in the attached 'Factual Basis,' which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt." (Id. at 15-16). The Factual Basis included the details described above and the statement that "in September of 2013, [Defendant] and [Glascock][1] participated in the sexual abuse of [Glascock's daughter] at [Glascock's] home in Brevard County." (Id. at 17).

Separately, Glascock entered guilty pleas to one count of Sexual Exploitation of a Minor for the Purpose of Producing Child Pornography, 18 U.S.C. § 2251(a) and (e), and

---

[1] The Factual Basis does not mention Glascock by name, but it refers to Middle District of Florida Case No. 6:14-cr-34-Orl-28DAB, which is the case in which Glascock was charged with eight counts, including sexual exploitation of a child; sexual enticement of a child; and receipt, possession, and distribution of child pornography.

3

one count of Attempted Sexual Enticement of a Minor, 18 U.S.C. § 2422(b).  Under the United States Sentencing Guidelines, Glascock had a Total Offense Level of 43 and fell in Criminal History Category I.  He was sentenced to life in prison.  Glascock's illegal activities were not limited to this case.  Glascock also traded pornographic pictures depicting himself sexually abusing his three-year-old daughter to William Osman.  In exchange for the lurid photographs of Glascock's daughter, Osman sent Glascock pornographic pictures of himself abusing his own one-year-old daughter.  Osman entered guilty pleas to one count of Production of Child Pornography, 18 U.S.C. § 2251(a) and (e), one count of Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2)(B), and one count of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B).  Osman's Total Offense Level was 43, and he fell within Criminal History Category III.  Osman received a sentence of 720 months in prison.

## II.  Proposed Guidelines Calculations

In crafting a reasonable sentence, the trial court must first correctly calculate the range of sentences called for by the Guidelines.  The Probation Office prepared a Presentence Investigation Report, including proposed findings required to calculate a correct advisory Guidelines range.  The Probation Office recommends a Total Offense Level of 37.  This includes a base offense level of 28, and the following upward adjustments under USSG § 2G1.3:

- Use of a computer (+2 levels) under USSG § 2G1.3(b)(3)(B)
- Commission of a sex act or sexual contact (+2 levels) under USSG § 2G1.3(b)(4)(A)
- Involving a minor who had not attained the age of 12 (+8 levels) under USSG § 2G1.3(b)(5)

These upward adjustments result in an Adjusted Offense Level of 40.  However, Defendant is entitled to the following downward adjustments under USSG § 3E1.1:

- Acceptance of responsibility (-2 levels) under USSG § 3E1.1(a)
- Assistance to authorities (-1 level) under USSG § 3E1.1(b)[2]

Thus, the Total Offense Level recommended by the Probation Office is 37.  Defendant has no criminal history points, placing him in Criminal History Category I, with a proposed advisory range of 210–262 months.

### III. Defendant's Objections to Proposed Guidelines Calculations

Defendant objects to the proposed sentencing enhancements for relevant conduct. The applicability of enhancements under USSG § 2G1.3 are determined by a defendant's relevant conduct, which includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" as well as all harm resulting from, or the object of, those acts or omissions.  USSG § 1B1.3(a).[3]  It

---

[2] In its latest memorandum (Doc. 93), the Government notes that Defendant sought to withdraw his plea and has had numerous conflicts with his counsel, (see Docs. 48, 66, & 84), and that a magistrate judge has found that "it is evident that Defendant . . . is taking steps to delay being sentenced on this case," (Doc. 86).  Based on this behavior, the Government notes that these downward adjustments under USSG § 3E1.1 may no longer apply to Defendant.  (Doc. 93 at 4).  However, "[i]n an effort to avoid any further delays in this matter, the Government does not plan to seek the removal of the three-level downward adjustment for acceptance of responsibility."  (Id.).  The § 3E1.1 downward adjustments will be applied to calculate Defendant's Total Offense Level.

[3] This is a narrower test than the "same course of conduct or common scheme or plan" that governs "offenses of a character for which § 3D1.2(d) would require grouping of multiple counts."  USSG § 1B1.3(a)(2).  Section 3D1.2(d) does not appear to govern § 1B1.3, and there is no argument from the Government or Probation Office that it does.  The

is intended that this Guidelines provision be interpreted broadly, <u>United States v. Behr</u>, 93

F.3d 764, 765 (11th Cir. 1996) (per curiam), and that relevant conduct include more than

the facts necessary to prove the offense of conviction.

Relevant conduct enhancements under USSG § 2G1.3 may be used to increase an

offense level because that conduct relates to the manner in which the crime was

committed.   To that extent, a sentencing court may consider "conduct underlying the

acquitted charge," <u>United States v. Watts</u>, 519 U.S. 148, 157 (1997) (per curiam), as well

as conduct alleged in counts dropped by the Government pursuant to a plea agreement,

<u>United States v. Scroggins</u>, 880 F.2d 1204, 1211 (11th Cir. 1989) (applying prior version

of Guidelines).   But if the conduct does not bear on the manner in which the defendant

committed the crime of conviction, the enhancements may not be used to punish crimes

for which defendants were not convicted. <u>See</u> <u>United States v. Faust</u>, 456 F.3d 1342, 1347

(11th Cir. 2006) (quoting <u>Watts</u>, 519 U.S. at 154).

Each of Defendant's objections to the proposed enhancements for relevant conduct

is addressed separately.

*A. Defendant's objection to increase under USSG § 2G1.3(b)(4)(A)*

Defendant objects to the scoring of two additional points under USSG §

2G1.3(b)(4)(A) for his sexual battery of Glascock's daughter.   This Guidelines provision

instructs that if "the offense involved the commission of a sex act or sexual contact" the

Guidelines score should be increased by two levels.   The basis of Defendant's objection is

that his sexual contact with Glascock's child in September 2013 was not involved in his

---

Government also does not assert that Defendant's conduct constitutes "jointly undertaken
criminal activity" to which § 1B1.3(a)(1)(B) applies.

6

crime of Attempted Enticement in November 2013. That sexual contact, he argues, should not be scored because it was the basis for Count One, which the Government agreed be dismissed. In response, the Government argues that the sexual acts with the child constitute conduct relevant to the attempted enticement charge because the conduct occurred in preparation of and during the commission of the attempted enticement.

The Government provides no evidence in support of its argument that the sexual abuse was done in preparation of the attempted enticement, and I cannot make such a connection. But the Government's argument that the sexual conduct occurred during the commission of the enticement offense presents a more difficult question. The phrase "during the commission of" connotes simultaneous temporal conduct. See United States v. Dunlap, 279 F.3d 965, 966 (11th Cir. 2002) ("Under any ordinary interpretation of the word 'during,' if [defendant] possessed the sadistic images when he (in May 1998) transmitted the child pornography, then the possession is 'relevant conduct.'"); USSG § 1B1.3 cmt. background ¶ 3 (distinguishing relevant conduct under § 1B1.3(a)(1) & (a)(2) ("On the other hand, in a robbery case in which the defendant robbed two banks, the amount of money taken in one robbery would not be taken into account in determining the guideline range for the other robbery, even if both robberies were part of a single course of conduct or the same scheme or plan. (This is true whether the defendant is convicted of one or both robberies.)")); see also United States v. Davis, 453 F. App'x 452, 462 (5th Cir. 2011) ("[A]lleged misconduct with [victim] did not occur during . . . offense of conviction, as it was alleged to have happened on and before February 22, 2005, while . . . charged conduct with [another victim] occurred from on or about June 1, 2006 to September 22, 2006."); United States v. Batchu, 724 F.3d 1, 10 (1st Cir. 2013) ("[F]or the district court to

7

enhance Batchu's sentence based on the video of Victim C, the video must have been made 'during' his relationship with Minor A [which was the basis for his conviction].").

I found no reported case with facts identical to those in this case. But in United States v. Weiner, 518 F. App'x 358 (6th Cir. 2013), the Sixth Circuit determined that the defendant's prior sexual contact with three minor victims was not relevant conduct in calculating his Guideline score for attempted enticement of a minor. The court reasoned that the prior conduct did not occur during the commission of the conviction offense and "was not contemporaneous with the use of the computer as asserted in the Information." Id. at 365. Obviously, the case at bar is different. Here, the victim of the abuse in September was also the intended victim of Defendant's crime of Attempted Enticement in November. Also, Defendant continued his discussions regarding further abuse of the victim until he was arrested. These facts result in greater connectivity between the offenses, but it does not bring the earlier conduct within the definition of "relevant conduct" under § 1B1.3(a) and § 2G1.3(b)(4)(A), because that conduct did not take place during the commission of Count Two.

Accordingly, the two-level enhancement for "commission of a sex act or sexual contact" should not be applied to Defendant's Guideline score because his sexual conduct on September 10, 2013 is not "relevant conduct," and Defendant's objection to the two-level increase in his proposed Guidelines score is sustained.

B. *Defendant's related objection under Rule 403, Federal Rules of Evidence*

Defendant offers another basis to exclude evidence of Defendant's September 2013 abuse of Glascock's three-year-old daughter. He suggests that consideration of this evidence in crafting a sentence for the crime of conviction would violate Rule 403, Federal

8

Rules of Evidence.  The rule states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  To the extent the motion seeks to avoid the two-level enhancement under § 2G1.3(b)(4)(A) for Defendant's sexual abuse of the child in September, Defendant's objection is denied as moot.

Rule 403, like most of the Federal Rules of Evidence, does not apply in sentencing proceedings.  See Fed. R. Evid. 1101(d)(3).  On this basis alone Defendant's objection is due to be overruled.  However, even if Rule 403 did apply at sentencing it would not bar the evidence at issue here.

Certainly, Defendant's prior treatment of the child has bearing on § 3553 sentencing factors described in the statute.  Most obviously, the conduct is relevant to subsection (1) of the statute—assessment of the nature and circumstances of the offense and the history and characteristics of Defendant.  Facts pertaining to Defendant's abuse of the child with the assistance of the child's father are relevant to the seriousness of the intent of Defendant in attempting to carry out the enticement.  Additionally, those facts explain the context of communications between Defendant and Glascock as well as later conversations between Defendant and the undercover agent posing as Glascock.  Defendant's conduct and statements made leading up to and directly following his abuse of the child are also relevant in determining the punishment required to meet the purposes of sentencing in subsection (2) of the statute.

Of course, the above statutory considerations are essential in determining the need for the sentence imposed.  In making that determination, subsection (2) of the statute mandates that the court consider what is necessary to afford adequate deterrence to

criminal conduct and to protect the public from further crimes.  Accordingly, I will consider Defendant's sexual abuse of the child in analyzing the § 3553 factors.  I will also consider the abuse of the child in determining the applicability of USSG § 4B1.5(b) because that conduct is probative in determining whether Defendant engaged in a pattern of activity involving prohibited sexual conduct.

   C.  *Defendant's objection to increase under USSG § 2G1.3(b)(5)*

   Defendant also objects to an eight-level enhancement under USSG § 2G1.3(b)(5), which applies if the offense involves a minor who has not attained the age of 12.  This provision does not depend on the allegations contained in Count One, as Defendant suggests.  Indeed, it applies to the facts constituting Defendant's crime of conviction. "Minor," as defined in the commentary, includes "an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct."  USSG § 2G1.3 cmt. n.1.  The actual three-year-old victim discussed by the law enforcement agent fits within the definition of "minor" in § 2G1.3.  Because the intended victim—a real child—was under 12 years old, Defendant's communications with an undercover agent "involved a minor who had not attained the age of 12 years." Accordingly, the eight-level enhancement can be applied to Defendant's offense of conviction. United States v. Carver, 348 F. App'x 449, 451-52 (11th Cir. 2009) (per curiam) (holding that the enhancement applies in a similar situation involving a fictitious eleven-year-old victim).

   Defendant's objection to the eight-level enhancement under USSG § 2G1.3(b)(5) is overruled.

### D. Defendant's objection to increase under USSG § 2G1.3(b)(3)(B)

Defendant argues that the two-point increase for use of a computer or computer system constitutes double counting because the crime of conviction—attempted enticement of a child under 18 U.S.C. § 2422(b)—includes an interstate component as an element of the offense. Indeed, the statute requires the use of "mail or any facility or means of interstate or foreign commerce." But it is entirely possible for this requirement to be met without the use of a computer.

This objection is without merit, and it is overruled.

## IV. Government's Objection to Proposed Guidelines Score and its Proposed § 4B1.5(b) Enhancement

Earlier in the sentencing hearing, the Government for the first time raised an objection to the Probation Office's proposed Guidelines calculation, contending that USSG § 4B1.5(b), Repeat and Dangerous Sex Offender Against Minors, applies to Defendant's Guidelines sentence. The Government then filed a memorandum in support of its position. (Doc. 93). Under this provision, an additional five levels are added to the Total Offense Level "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct." USSG § 4B1.5(b). Defendant filed his written argument in opposition to enhancement (Doc. 94) on the ground that his conduct did not involve a "pattern of activity" because Defendant only engaged in prohibited sexual conduct with a minor on one occasion.

The first two requirements of § 4B1.5(b) are not at issue. An offense against a minor under chapter 117 of title 18, United States Code is a covered sex crime. Defendant's crime of conviction—attempted enticement of a minor in violation of 18 U.S.C. 2422(b)—is

included in chapter 117 and thus is a covered sex crime.  Also, neither § 4B1.1 nor § 4B1.5(a) applies.  The only question requiring discussion is whether the third requirement of § 4B1.5(b)—that "defendant engaged in a pattern of activity involving prohibited sexual conduct"—is present in this case.

"Prohibited sexual conduct" under this subsection includes "any offense described in 18 U.S.C. [§] 2426(b)(1)(A) or (B)," which includes offenses in chapter 117[4] such as § 2422(b), the statute Defendant was charged with violating in Counts One and Two.  See USSG § 4B1.5 cmt. n.4(A); 18 U.S.C. § 2426(b)(1)(A).  Prohibited sexual conduct encompasses uncharged conduct.  United States v. Castleberry, 594 F. App'x 612, 613 (11th Cir. 2015) (per curiam).  Defendant's admitted conduct pertaining to Counts One and Two—including the actual enticement and the subsequent attempted enticement of the child—constitutes prohibited sexual conduct.  Additionally, the Internet conversations with Glascock and an undercover agent between September 11, 2013, and November 4, 2013, in which Defendant further sought to abuse Glascock's daughter constitute separate instances of prohibited sexual conduct as attempted enticement under 18 U.S.C. § 2422(b).  See United States v. Rothenberg, 610 F.3d 621 (11th Cir. 2010); Castleberry, 594 F. App'x 612.

---

[4] At the sentencing hearing, Defendant argued that offenses under chapter 117 were not covered within the meaning of "prohibited sexual conduct."  However, § 2426(b)(1)(A) includes offenses "under this chapter."  Section 2426 is located within chapter 117, so I find that conduct within chapter 117 is prohibited conduct under § 4B1.5. Moreover, even if Defendant's argument on this issue had merit, Defendant's conduct would qualify as "prohibited sexual conduct" because it would constitute offenses under Florida state law—namely, sexual battery and child abuse—that would be an offense under chapter 109A if the conduct occurred within the territorial jurisdiction of the United States. See 18 U.S.C. §§ 2426(b)(1) & 2241.

The only question, then, is whether Defendant's conduct constitutes a *pattern of activity*. On this issue, the Guidelines provide:

> (B)   Determination of Pattern of Activity.—
>
> > (i)   In General.—For purposes of subsection (b), the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.
> >
> > (ii)   Occasion of Prohibited Sexual Conduct.—An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

USSG § 4B1.5 cmt. n.4(B).

Defendant's conduct clearly fits within this definition. By comparison, just one additional prohibited Internet chat with a minor, when added to the offense of conviction, can constitute a pattern of activity. Rothenberg, 610 F.3d at 625 n.5; Castleberry, 594 F. App'x at 613. Here, Defendant engaged in many instances that constitute a pattern of activity—his September 2013 abuse of the child and his multiple instances of attempted and successful enticement of the child. Accordingly, the Government's objection is sustained. Defendant engaged in a pattern of activity involving prohibited sexual conduct, and the five-level adjustment shall be applied.

**V. Final Guidelines Score**

Based on the findings above, I find that Defendant's Total Offense Level under the Guidelines is 40 and that he falls within Criminal History Category I. This score produces an advisory Guidelines range of 292-365 months in prison.

**VI. Statutory Sentencing Factors**

It is the duty of a sentencing court to impose a sentence that is sufficient but not greater than necessary to meet the statutory purposes of sentencing. In meeting that mandate a court must consider the advisory Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a)(1)-(7). In determining a reasonable sentence in this case I have considered all factors contained in the statute, including the following:

A. *18 U.S.C. § 3553(a)(1)—Nature and Circumstances of the Offense*

The nature and circumstances of this offense weigh against a lenient sentence. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . . ." United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009). The victims of these crimes are the most vulnerable members of our society, and civilization is measured to some degree on how well it protects its young from those who would abuse them. The harm from these types of crimes is long-lasting; children who are sexually abused will often have difficulty maintaining normal relationships in the future.

The statute under which Defendant was convicted protects children under the age of 18, and USSG § 2G1.3(b)(5) assesses additional Guidelines Offense Levels if the victim of the crime is under 12. In considering the nature of Defendant's crime, it is appropriate to consider the fact that his victim was only three years old; this weighs against a lenient sentence. Also bearing on the nature and circumstances of this case are the graphic descriptions of abuse the Defendant intended to inflict as well as his resolve in carrying out this type of abuse, as evidenced by his previous abuse of the child victim, his continuous efforts to schedule another opportunity for future abuse, and his preparation to again abuse the child by stopping to get "lube" on his way to Glascock's house. But for the intervention of law enforcement, Defendant most certainly would have sexually abused the child again.

14

*B.    18 U.S.C. § 3553(a)(1)—The History and Characteristics of Defendant*

Other than the crimes that bring Defendant before the Court, there is nothing remarkable about Defendant's history. His childhood was free from abuse, and though he came from a broken home, he had a good relationship with relatives. (Presentence Investigation Report, Doc. 82, ¶ 52). Defendant generally enjoys good physical health, although he was discharged from the United States Marine Corps due to sleep problems. (Id. ¶¶ 55-56). He withdrew from high school to join the Marines, but he obtained his high school diploma and attended college. (Id. ¶¶ 58-59). It is obvious to me that Defendant is intelligent.

The most specific facts available bearing on characteristics of Defendant are contained in his discussions about his abuse and intended abuse of the child victim in this case. Although his conversations with Glascock and the undercover agent are repugnant, they do reflect on Defendant's character. Indeed, rarely is insight into any defendant's character so readily available. Defendant's many statements include the following:

- Before Defendant's abuse of Glascock's daughter:
    - "In my fantasy I'd sit on the couch with a girl on my lap and slide my fingers into her little panties and finger her clit while we watched cartoons. Then I'd undress her once she was wet and wiggling her hips and sit with my cock between her thighs and rub it up and down her little cunt while she held the tip. Then when the cartoon was done I'd take her to the bedroom to play. I'd have her lick and suck on the tip while she laid on my chest and I played with her tight little butt. I'd use a whole bunch of lube and play with her ass until she was loose enough to slip my pinky inside. Then

15

I'd finger her while she held my cock and played with it. Want to hear more? Tell me what new stuff you've [sic] with her in your fantasies and I'll go on." (Plea Agreement at 19).

o "After fingering her for long enough to get her nice and loose. I'd add another finger and keep going while she laid on my stomach, panting, and squirming. Then when she couldn't take it anymore, I'd lay her on her back and slide the head of my cock up and down her little cunt, getting it all wet and slippery with pre cum. I'd push the head tight against her little cunt and shoot it inside her, filling her up. . . . you thinking of taking another shot at getting together?" (Id. at 19).

- After the abuse of Glascock's daughter:

o "Hell yeah. I wish that we had more time though. (and more lube too. Lol) Then we could have tried some other things." (Id. at 21).

o "[Y]ou may want to think about your boy some more. He seemed pretty smart, and putting him in his room every time will make him mad and ask questions . . . ." (Id.).

- Regarding plans to further abuse Glascock's daughter:

o "That really sucks. I cant get there by then and still have enough time to help you finger her and fill her with cum. Think maybe I could have a couple naughty pics of her little holes spread open for me? (Id. at 22).

o "I'd love to pop her cherry and put fingers in both her holes before filling her little cunt with cum :) . . . . I'd like to come at about 10:30 or 11, that way we have plenty of time to play with your daughter and fill her holes

16

up with fingers and cum ;) . . . . I'm looking forward to seeing how far we

can stretch her out and how much cum we can put in her ;) (Id. at 23-24).

o   "I can be there in about 45 minutes if you give the address again. And do

I need to bring some lube, or do you have some?" (Id. at 24-25).

These statements reveal Defendant's appetite for cruelty; as soon as he had completed various forms of sexual battery on the child, he began planning for another session involving even more despicable conduct.

These statutory factors weigh against a lenient sentence.

C.   *18 U.S.C. § 3553(a)(6)—Need to Avoid Unwarranted Sentencing Disparity*

It is always a goal to avoid unwarranted sentencing disparity. Some crimes, such as drug offenses and child pornography, are common, and it is therefore easy to assess how a sentence compares with others. The crime of enticement is not as common as many other crimes, so there are not as many comparators. And, in this case, there are unusually detailed facts of Defendant's crime and character. At least two other individuals—Glascock and Osman—committed related offenses and were sentenced to lengthy sentences. Considering their sentences, as well as others, there is no disparity in the sentence imposed here.

D.   *18 U.S.C. § 3553(a)(7)—Need to Provide Restitution to Victims*

It is not clear that restitution is an issue in this case. To the extent it is, however, it is not a mitigating factor.

E.   *18 U.S.C. § 3553(a)(2)—The Need for the Sentence Imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*

Because of the seriousness of the offense, the need to promote respect for the law, and to provide a just sentence, a sentence of at least 365 months' incarceration is required. This sentence is also needed to deter Defendant and others from committing similar crimes. A long prison term also will serve to deter others who would consider engaging in such despicable conduct. It is clear from Defendant's acts and statements that the public— particularly its vulnerable children—requires protection that can only be provided by a lengthy term of imprisonment.[5]

## VII. Reasonable Sentence

After considering the § 3553 sentencing factors, I find that a sentence of 365 months of incarceration is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Defendant's sentence would be the same if I had sustained his objections to the proposed Guidelines score and I had overruled the Government's objection. A sentence of less than 365 months would not be reasonable under the facts of this case.

DONE and ORDERED in Orlando, Florida on April 2 7, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Jonathan Tyler Prive

---

[5] I have also considered the other statutory factors specified in §§ 3553(a)(3), (4), and (5), including the Guidelines range.

18

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**UNITED STATES OF AMERICA**

vs

**JONATHAN TYLER PRIVE**

_____

**Case Number: 6:14-cr-33-Orl-28KRS**

**USM Number: 60386-018**

**Daniel Newton Brodersen, CJA**
**533 N. Magnolia Ave**
**Orlando, FL 32801**

## JUDGMENT IN A CRIMINAL CASE

The defendant pleaded guilty to Count Two of the Indictment.  Accordingly, the Court has adjudicated the defendant guilty of the following offense:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C. § 2422(b) | Attempted Enticement of a Minor | November 5, 2013 | Two |

The defendant is sentenced as provided in the following pages of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count One of the Indictment is dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence:

April 22, 2015

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

April 2 7 , 2015

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 365 Months

The defendant is remanded to the custody of the United States Marshal.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
Deputy U.S. Marshal

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of Life.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The mandatory drug testing requirements of the Violent Crime Control Act are waived. However, the Court orders the defendant to submit to random drug testing not to exceed 104 tests per year.

The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervision that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervision in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).

The defendant shall also comply with the additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;

2. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4. The defendant shall support his or her dependents and meet other family responsibilities;

5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6. The defendant shall notify the probation officer **at least ten (10) days prior** to any change in residence or employment;

7. The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9. The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

10.　The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;

11.　The defendant shall notify the probation officer within **seventy-two (72) hours** of being arrested or questioned by a law enforcement officer;

12.　The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13.　As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

## ADDITIONAL CONDITIONS OF SUPERVISED RELEASE

1.　The defendant shall be prohibited from incurring new credit charges, opening additional lines of credit, or making an obligation for any major purchases without approval of the probation officer. The defendant shall provide the probation officer access to any requested financial information.

2.　The defendant shall participate in a mental health program specializing in sex offender treatment and submit to polygraph testing for treatment and monitoring purposes. The defendant shall follow the probation officer's instructions regarding the implementation of this court directive. Further, the defendant shall contribute to the costs of such treatment and/or polygraphs not to exceed an amount determined reasonable by the probation officer based on ability to pay or availability of third party payment and in conformance with the Probation Office's Sliding Scale for Treatment Services.

3.　The defendant shall register with the state sexual offender registration agency(s) in any state where he or she resides, visits, is employed, carries on a vocation, or is a student, as directed by the probation officer. The probation officer will provide state officials with all information required under Florida sexual predator and sexual offender notification and registration statutes (F.S.943.0435) and/or the Sex Offender Registration and Notification Act (Title I of the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248), and may direct the defendant to report to these agencies personally for required additional processing, such as photographing, fingerprinting, and DNA collection.

4.　The defendant shall have no direct contact with minors (under the age of 18) without the written approval of the probation officer and shall refrain from entering into any area where children frequently congregate, including: schools, daycare centers, theme parks, playgrounds, etc.

5.　The defendant is prohibited from possessing, subscribing to, or viewing, any video, magazine, or literature depicting children in the nude and/or in sexually explicit positions.

6.　The defendant shall not possess or use a computer with access to any online service at any location (including employment) without written approval from the probation officer. This includes access through any Internet service provider, bulletin board system, or any public or private computer network system. The defendant shall permit routine inspection of his or her computer system, hard drives, and other medial storage materials, to confirm adherence to this condition. This inspection shall be no more intrusive than is necessary to ensure compliance with this condition. The defendant shall inform his or her employer, or other third party who may be impacted by this condition, of this computer-related restriction and the computer inspection provision of the condition.

7.　The defendant shall submit to a search of his or her person, residence, place of business, any storage units under the defendant's control, computer, or vehicle, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to a search pursuant to this condition.

AO 245B (Rev. 4/09) Judgment in a Criminal Case

Jonathan Tyler Prive
6:14-cr-33-Orl-28KRS

8.      The defendant shall cooperate in the collection of DNA, as directed by the probation officer.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $100.00 | $0.00 | $0.00 |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

The Special Assessment in the amount of $100.00 is due in full and immediately.

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court, unless otherwise directed by the court, the probation officer, or the United States attorney.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

The defendant shall pay interest on any fine or restitution of more than $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the Schedule of Payments may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994 but before April 23, 1996.

AO 245B (Rev. 4/09) Judgment in a Criminal Case

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Appendix to Appellant's Brief was furnished electronically via CM/ECF to Linda Julin McNamara, Assistant U.S. Attorney, and by United States Mail to Jonathan Tyler Prive, #60386-018, Brevard County Jail Complex, 860 Camp Road, Cocoa, Florida 32927 on this 10th day of August, 2015.

_____
Attorney