

U.S. COURT OF APPEALS
RECEIVED
CLERK
JUN 2 4 2016
ATLANTA, GA

06/13/2016

In The United States Court of Appeals
For The Eleventh Circuit

No. 15-12032-DD

D.C. Docket No. 6:14-cr-00033-JA-KRS-1

UNITED STATES OF AMERICA

Plaintiff-Appellee

versus

JONATHAN TYLER PRIVE

Defendant-Appellant

PETITION FOR REHEARING
EN BANC

On Appeal from the United States District Court
for The Middle District of Florida

## Certificate of Interested Persons

The following individuals are known to the Defendant to have an interest in the outcome of this appeal:

- Daniel N. Brodersen   —   1328 East Concord Street
  (Lead attorney)                Orlando, FL 32803
  (Withdrawn from case)      Phone: (407) 649-0007
  (Defense attorney)            Fax: (407) 649-0017
                                         Email: brodersend@gmail.com

- Andrew C. Searle   —   U.S. Attorney's Office — FLM
  (Lead attorney)            Suite 3100
  (U.S. Attorney)            400 W. Washington Street
                                      Orlando, FL 32801
                                      Phone: (407) 648-7500
                                      Email: andrew.searle@usdoj.gov

- Jonathan T. Prive   —   #337795
  (Defendant-Appellant)    860 Camp Road
  (Petitioner)                     Cocoa, FL 32927
  (Not currently represented
  by counsel)

These afforementioned persons are known to have an interest in the outcome of this appeal, and the petition for rehearing en banc. In accordance with the instructions given in the MEMORANDUM TO COUNSEL OR PARTIES, sent to me on May 24th, 2016, and the requirement to

page 1 of 2

Certificate of Interested Persons

list all persons and entities listed on all certificates previously filed
by any parties in the appeal, the following persons are also known to the
Defendant to have been included in prior certificates:

- Elora Jackson, DD —    United States Court of Appeals
  (Clerk of Courts)         Eleventh Circuit
                            Office of the Clerk
                            56 Forsyth Street, N.W.
                            Atlanta, GA 30303

- Linda Julin McNamara —  Furnished electronically via CM/ECF
  (Assistant U.S. Attorney)

No others are known by the Defendant to have an interest in the outcome of
this appeal, or petition for rehearing en banc, or to have previously been listed on
any certificate filed therein.

page 1

This letter is meant to be received by the Court and considered an official petition for rehearing en banc, pursuant to the Court's order on May 24th, 2016, granting counsel's motion to withdraw pursuant to his Anders Brief, affirming my conviction and sentence, and denying my motion to appoint new counsel.

I believe that there were several issues which were either overlooked or misapprehended by the Court during the consideration of the merits of my appeal, and grounds for appeal, in my Response With Incorporated Motion to Withdraw, which was written in response to the afforementioned Anders Brief. On January 4th, 2016, that Response was filed by the Clerk, and the afforementioned order was entered on May 24th, 2016.

I believe that the panel decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this circuit, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: Bond v. United States, 134 S.Ct. 2077, 189 L.Ed.2d 1 (2014); United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624 (1995); United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740 (2000); Jones v. United States, 529 U.S. 848, 120 S.Ct. 1904 (2000); United States v. Bass, 404 U.S. 336, 92 S.Ct. 515 (1971); United States v. Batchelder, 424 U.S. 114, 99 S.Ct. 2198 (1979); West Virginia University Hospitals, Inc. v. Casey, 449 U.S. 83, 111 S.Ct. 1138 (1991); Union Bank v. Wolas, 502 U.S. 151, 112 S.Ct. 527 (1991); United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830 (2008); United States v. Odom, 252 F.3d 1289 (11th Cir., 2001); United States v. Gray, 260 F.3d 1267 (2001)(11th Cir.); United States v. Wayerski, 626 F.3d 1342 (11th Cir., 2010); United States v. Hunt, 526 F.3d 739 (11th Cir, 2008); United States v. Ballinger, 312 F.3d 1264 (11th Cir., 2002); United States v. Murrell, 368 F.3d 1283 (11th Cir., 2004); and United States v. Ballinger, 395 F.3d 1218 (11th Cir., 2005)(en banc).

I believe that, due to the holdings in these and other cases, this appeal involves several questions of exceptional importance. Among these questions are: (1) Whether the

page 2

jurisdictional hook of 18 U.S.C. §2422(b), "... any facility or means of interstate or foreign commerce...", is so vague and standardless that men of ordinary intelligence must necessarily guess at its meaning and differ as to its application, thereby denying due process under the fifth Amendment. (2) Whether, pursuant to United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, and its progeny, Congress may regulate the act of persuading, inducing, enticing, or coercing an individual under the age of 18 to engage in an unlawful sexual act, when said persuasion, inducement, enticement, or coercion, is not "in or affecting" interstate commerce, and when the plain text of 18 U.S.C. §2422(b) does not prohibit interstate activities, or the use of channels or instrumentalities of interstate commerce. (3) Whether 18 U.S.C. §2422(b) impermissibly alters the balance of federal and State criminal jurisdiction by attempting to regulate something already criminalized by State laws, violating the 'clear statement' rule of statutory interpretation, displacing policy decisions and the prosecutorial discretion of the State of Florida.

These issues merit en banc consideration because each one deals with serious Constitutional concerns which might result in a drastic departure from the standards of law established by both the Supreme Court of the United States and the 11th Circuit Court of Appeals. Both courts have stressed the importance of preserving the delicate balance between federal and State authority, and this court has a substantial interest in ensuring uniform application of the law, and in preserving those rights afforded by the Constitution. The Court also has an interest in ensuring that prior precedent regarding statutory interpretation is not ignored.

As the statute at issue in this case is based on an exercise of Congress' very limited ability to regulate non-economic activities, and as the statute may be based on invalid legal authority pursuant to Lopez, and because of the need to maintain the federal-State balance, the Court should examine the issues of law to determine if §2422(b) is still a constitutional exercise of Congress' Commerce Power, as well.

page 3

At its heart, this appeal concerns principles of statutory interpretation. In *United States v. Gray*, 260 F.3d 1267, 1271 (11th Cir., 2001), this court said ""[T]he interpretation of a statute is a matter of law subject to de novo review," *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir., 1999), and "constitutionality of statutes is reviewed de novo." *United States v. Osburn*, 955 F.2d 1500 (11th Cir., 1992)." See also, *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir, 2008)(In regards to a due process challenge, the Court said "[W]e review such a constitutional challenge de novo.")(quoting *United States v. Knight*, 490 F.3d 1268, 1270 (11th Cir, 2007)).

In challenging §2422(b)'s constitutionality under the Due Process Clause, I used the 11th Circuit's own precedent from *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010), which held that "[V]agueness is an outgrowth of the Fifth Amendment's Due Process Clause. *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008). It encompasses notions of fair warning, such that people of common intellect may understand a statute's prohibitions and need not guess at its meaning." See also, *United States v. Hunt*, supra, 526 F.3d at 743, which states: "The Fifth Amendment's Due Process Clause harbors within its scope the notion of fair warning: a statute cannot be enforced "if it is so vague that 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *United States v. Mena*, 863 F.2d 1522, 1527 (11th Cir, 1989)(quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

Justice Scalia, concurring in *Bond v. United States*, 134 S.Ct. 2077, at 2097 (2014), said: "A criminal statute must clearly define the conduct it proscribes. If it does not "give a person of ordinary intelligence fair notice" of its scope... it denies due process." (quoting *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

18 U.S.C. §2422(b) does not clearly describe the conduct which it proscribes, or its scope, leaving a person of ordinary intelligence to guess at both, and 'differ as to its application'. Its key jurisdictional hook, "... any facility or means of interstate or foreign commerce..."

page 4

is not defined in 32422(b), and this court's prior cases, as well as those of the Supreme Court, have held that "when terms used in a statute are undefined, we give them their ordinary meaning." (Jones v. United States, 529 U.S. 848, 855, 120 S.Ct. 1904, 1910 (2000))(quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187, 115 S.Ct. 778 (1995)).

The ordinary meaning of "facility" is a building, or a physical location. Nobody, "in light of common understanding and practice", United States v. Hunt, 626 F.3d 739, 743 (11ᵗʰ Cir., 2008), would refer to a facility as anything else, yet the unorthodox application of that term to cover things like the internet or cell phones is used by prosecutors to obtain convictions, thereby denying due process because of the failure to provide fair notice of the much broader reach given to it during federal prosecutions.

"Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (Jones, id., at 858, 120 S.Ct. at 1912)(quoting Rewis v. United States, 401 U.S. 808, 812, 92 S.Ct. 1056); See also, United States v. Bass, 404 U.S. 336, 92 S.Ct. 515, 523 (1971)(holding that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.") Thus, we must conclude that the term "facility" is unconstitutionally vague, since the scope of the statute's usage far exceeds the ordinary meaning that Jones, and Asgrow Seed Co., supra, 513 U.S. at 187, 115 S.Ct. 788, say should be applied to the plain language.

The second half of the jurisdictional hook I challenged as unconstitutionally vague is the "means" of interstate or foreign commerce. This term, when given its ordinary meaning in accordance with Asgrow, id., and the 11ᵗʰ Circuit touchstone of the "common understanding and practice" set forth in Hunt, supra, means "something used to accomplish a goal." Literally anything in the world could function as a means of interstate commerce. Your own voice is a means of interstate commerce if it is used to achieve the goal of commerce, as is a paper and pen, a cell phone, or even a shell from the beach, should you try and sell it or trade it. The term can encompass literally anything or anyone, and is entirely subjective, allowing for a great deal of doubt as to what it includes. Thus, it fails to give fair notice of exactly what the statute prohibits the use of, in regard to its substantive proscription, and violates due process.

page 5

But what of the assertion by the Government that the term is not vague at all, but is perfectly clear? Black's law dictionary defines "means" as: "1. Available resources, esp. for the payment of debt," or "2. Something that helps to attain an end." Either way the term is held, whether 'vague' or 'clear', the meaning is the same. We are still faced with the inescapable fact that a "facility or means of interstate or foreign commerce" is unconstitutionally vague, as "facility" is used in ways that defy common understanding and "means" can still be literally anything that could possibly be used to help accomplish commerce, even if not actively engaged in use for that purpose. Your voice is still a means of interstate commerce, as is the paper and pen, the cell phone, or the shell from the beach.

No matter how we try to avoid it, the term remains utterly ambiguous, and violates due process under the Fifth Amendment. There is no limiting element, or other standard by which a person of ordinary intellect might be able to use to clarify what §2422(b) covers, and it leaves them to necessarily guess at its scope.

The United States Supreme Court said, in <u>United States v. Williams</u>, 553 U.S. 285, 306, 128 S.Ct. 1830, 1846 (2008):

> "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent" — wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings."

This statute is similarly vague. Even worse, because the term "... using... any facility or means of interstate or foreign commerce" can be applied to nearly anything, regardless of whether or not the subject is being used for an economic purpose, or whether it is used "in or affecting commerce", the main jurisdictional element here becomes mere surplusage, having no real effect.

It will, no doubt, be argued that this statute's judicial hook is not unconstitutionally

vague, but the results speak for themselves. The Government will undoubtedly say §2422(b) is not intended to regulate the use of a human voice to persuade, induce, entice, or coerce a minor, but the fact that the plain language *would* reach such things is the inescapable conclusion we are left to confront.

Quoting again from *Williams*, id., 553 U.S. at 294, 128 S.Ct. 1839: "Meanings are narrowed by the commonsense canon of *noscitur a sociis* — which counsels that a word is given more precise content by the neighboring words which it is associated with." Unfortunately, the only limiting association is that the "means" is capable of helping accomplish interstate or foreign commerce. This still leaves your own voice as a "means". Justice Stevens, concurring in *Williams*, id., at 294, 128 S.Ct. 1847, tells us that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." (quoting *Hooper v. California*, 155 U.S. 648, 657, 15 S.Ct. 207). However, "the maxim that statutes should be construed to avoid constitutional questions offers no assistance here. This "'cardinal principle' of statutory construction... is appropriate only when [an alternative interpretation] is 'fairly possible' from the language of the statute.'" (*United States v. Batchelder*, 442 U.S. 114, 122, 99 S.Ct. 2198, 2203 (1979))(quoting *Swain v. Pressley*, 430 U.S. 372, 378 n. 11, 97 S.Ct. 1224, 1228 (1977)).

If the term "means" is not unconstitutionally vague, as the Government would suggest, and only one interpretation is possible, then we must adhere to the Supreme Court's rulings in cases like *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 99, 111 S.Ct. 1138, 1147 (1991), where they said that "where, as here, the statute's language is clear, "the sole function of the court is to enforce it according to its terms.'"

This leaves us with a statute which, by its clear terms, regulates the strictly non-economic intrastate activity of persuasion, inducement, enticement, or coercion, without any connection to interstate or foreign commerce at all. 18 U.S.C. §2422(b), by utilizing the ubiquitous "means", which includes everything which might possibly be used to achieve interstate commerce, thereby transforms every single sex offense into a matter for Federal enforcement,

page 7

merely upon the showing that an individual under the age of 18 was involved.

Both the ordinary meaning and the definition of "means" are plain, but 'plain' and 'vague' are not mutually exclusive in this case. That the word has a generally accepted meaning does not mean that what it refers to is sufficiently narrow to keep from being unconstitutionally vague, as shown by the Supreme Court's striking of statutes that tied criminal culpability to "annoying" or "indecent" conduct, referred to in *Williams*, supra.

The use of the specific term "any facility or means" of interstate commerce, also gives rise to the unconstitutional exercise of Congress' power to regulate commerce.

"The fact that Congress may not have foreseen all the consequences of a statutory enactment is not sufficient reason for refusing to give effect to its plain meaning." *Union Bank v. Wolas*, 502 U.S. 151, 158, 112 S.Ct. 527, 531 (1991)(quoting *Toibb v. Radloff*, 501 U.S. 157, 164, 111 S.Ct. 2197, 2201, 115 L.Ed.2d 145 (1991)). Congress did not know, when they passed 18 U.S.C. §2422(b) that the Supreme Court's landmark ruling in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624 (1995), would thereafter limit the constitutional exercise of Congress' Commerce Clause power to the three categories of 'channels', 'instrumentalities', and 'activities which substantially affect interstate commerce'.

Congress could not have known that the language they used in enacting §2422(b) would be used to make inroads into areas of traditionally held State criminal jurisdiction, or that the constitutional requirement that intrastate non-economic activities must, by themselves, significantly affect interstate commerce would be clearly established after the statute's enactment, thereby invalidating it.

Congress could easily have enacted a statute with different jurisdictional elements. They might have used the terms "using... a channel or instrumentality of interstate or foreign commerce," or included the requirement that the prohibited activity take place "in or affecting" commerce, but they did not. They chose, instead, to enact §2422(b) with the much more limiting language "any facility or means", and we are bound by that more restrictive language.

page 8

18 U.S.C. §2422(b) reads as follows:

"Whoever, using the mail, or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution, or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned for not less than 10 years, or for life."

The statute's plain language does not require that the offense be "in or affecting" interstate commerce. It does not contain any prohibitions against communicating across state lines, or against utilizing the channels or instrumentalities of interstate commerce to "persuade[], induce[], entice[], or coerce[]". It therefore cannot be an exercise of Congress' power to regulate the channels or instrumentalities of interstate commerce. The only power left to Congress, then, is the ability to regulate activities which substantially affect interstate commerce, and the only jurisdictional elements present are "facilities" or "means" of interstate commerce.

The problem with this is that Congress does not have the power to regulate something just because it is a "facility" or "means" of interstate commerce. The simple fact that something is a means of interstate commerce, without it being used for a commercial activity, does not give Congress the ability to use its attenuated connection to commerce as an excuse for broad general regulation of state activities. See Maryland v. Wirtz, 392 U.S. 183, 197, n. 27, 88 S.Ct. 2017 (1968) (the Constitution does not permit Congress to use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities).

As this court held in United States v. Odom, 252 F.3d 1289 (2001), "[a]llowing the government to meet the interstate commerce requirement through only a nominal showing of

page 9

a connection to interstate commerce would do as much to "completely obliterate" the distinction between national and local authority as if no jurisdictional requirement existed at all." There is no question that the mere use of a 'means' of commerce, without any economic impact, and even though it may only be *possible* to use it for commerce, is an undeniably "nominal" showing. What's more, the court also specified that "a federal statute may regulate purely intrastate activity, only if it regulates economic activity." United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 1750 (2000); United States v. Lopez, 514 U.S. 549, 559-561, 115 S.Ct. 1624, 131 L.Ed. 2d 626 (1995).

18 U.S.C. §2422(b) therefore violates both the holdings of this court in Odom, supra, and the ruling by the Supreme Court in Morrison and Lopez. It neither requires, nor offers, any further showing of a connection to commerce.

§2422(b) does not say that it is a crime to use an instrumentality or a channel of commerce during an incident of persuasion, inducement, enticement, or coercion. It does not make it a crime to communicate by transmitting data over state lines for that purpose, either. It will undoubtedly be argued that this is exactly what the statute is meant to do, and that the Congressional purpose in enacting §2422(b) must prevail over the ordinary meaning of the statutory terms. There will no doubt be quotes from House and Senate reports, and statements from legislators who debated or supported the bills, but the Supreme Court faced a similar question of intent versus statutory language in West Virginia University Hospitals, Inc. v. Casey, 499 U.S. 83, 98, 111 S.Ct. 1138, 1147 (1991):

"As we have observed before, however, the purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone... The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous — that has a clearly accepted meaning in both legislative and judicial practice — we do not permit it to be expanded or

page 10

Contracted by the statements of individual legislators or committees during the course of the enactment process. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) ("[W]here, as here, the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'")

The 11th Circuit held similarly in United States v. Hunt, 526 F.3d 739, 744 (2008), where they said that "when the text of a statute is plain, however, we need not concern ourselves with contrary intent, or purpose revealed by the legislative history." See Harry v. Marchant, 291 F.3d 767, 772 (11th Cir., 2002)(en banc) (holding that courts should follow clear statutory language even where an inquiry into legislative history reveals contrary congressional intent.).

The courts are bound as much by what §2422(b) does say, as by what it does not say. The plain text does not regulate channels or instrumentalities of interstate commerce, but instead "any facility or means," and Congress is not constitutionally permitted to use either of these as an excuse for regulation of what is a matter of traditionally held State criminal jurisdiction.

By its clear wording, the plain text of §2422(b) is actually crafted to target the entirely non-economic activity of using a means of commerce while in the process of persuading, inducing, enticing, or coercing a minor into performing a sexual act. The 11th Circuit acknowledges this in United States v. Murrell, 368 F.3d 1283 (2004), holding that "[t]he underlying criminal conduct that Congress expressly proscribed in passing §2422(b) is the persuasion, inducement, enticement, or coercion of the minor." Furthermore, as the statute does not make it unlawful to do this across state lines, we can see that it plainly regulates the non-economic, intrastate activity of persuading, inducing, enticing, or coercing a minor.

This attempt to regulate local activity is a major intrusion into traditionally held State criminal jurisdiction. The 11th Circuit says that "the Constitution permits Congress to regulate only those intrastate activities which have a substantial effect

page- 11

on interstate commerce, and such regulation of interstate activity reaches the outer limits of Congress' Commerce Power." To hold otherwise would "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the State." United States v. Ballinger, 312 F.3d 1264 (11ᵗʰ Cir., 2002) (quoting Lopez, supra, 514 U.S. at 567, 115 S.Ct. 1624).

By attempting to regulate the intrastate, non-economic activity of attempting to persuade, induce, entice, or coerce a minor into a sexual act for which any person can be charged with a criminal offense, and without requiring any real connection to commerce, §2422(b) effectively allows the federal government to radically adjust the balance of federal and state criminal jurisdiction. This unconstitutional exercise of a police power allows the government to essentially assume the role of a State prosecutor, using the fact that a defendant could be charged with a State criminal offense in order to secure a federal conviction, regardless of the will of the real State prosecutors.

This results in a serious abrogation of State sovereign authority, and may often result in situations where the government disregards state prosecutorial discretion. The situation we are then faced with a situation nearly identical to the one faced by the Supreme Court in Bond v. United States, 134 S.Ct. 2077 (2014). There, as here, the court had to consider the consequences of prosecuting a defendant under a federal statute when the State had already made the decision not to prosecute her under a similar State law.

The Supreme Court said: "It is also clear that the laws of the Commonwealth of Pennsylvania (and every other State) are sufficient to prosecute Bond... The Government objects that Pennsylvania authorities charged Bond with only a minor offense... and declined to prosecute her for assault. But we have traditionally viewed the exercise of state officials' prosecutorial discretion as a valuable feature of our constitutional system...

"Prosecutorial discretion involves carefully weighing the benefits of a prosecution against the evidence needed to convict, the resources of the public fisc, and the public policy of the State. Here, in its zeal to prosecute Bond, the Federal Government has "displaced" the

page 12

"public policy of the Commonwealth of Pennsylvania, enacted in its capacity as sovereign," that Bond does not belong in prison for a chemical weapons offense. [Bond v. United States, 564 U.S. __, 131 S.Ct. 2355, 2366, 180 L.Ed.2d 269 (2011)]; see also Jones, supra, at 859, 120 S.Ct. 1904 (Stevens, J., concurring)(federal prosecution of a traditionally local crime "illustrates how a criminal law like this may effectively displace a policy choice made by the State").

   Bond v. United States, 134 S.Ct. 2077, 2092-2093, 189 L.Ed.2d 1 (2014).

   While Bond's case involved a federal chemical weapons statute and this appeal deals with 18 U.S.C. §2422(b), this case also deals with an issue of the federal government "displacing" a policy choice by the State of Florida. The State of Florida has numerous laws which already govern the conduct in this case, such as FL Statutes §847.013 (relating to computer crimes generally), §847.0135(3) (solicitation of a child, via computer service, to commit an unlawful sex act), §800.04 (lewd and lascivious conduct), etc. The State even readily defines as an offense "commercial sex acts", which criminalize the use of a computer to "persuade, induce, entice and coerce" a person into a sexual act. The only real difference between that and §2422(b) is the requirement, under the state law, of an element of coercion.

   The defendant in this case was not prosecuted for this, or any of the above offenses, by Florida, though it had the right to do so. Here, as in Bond, the federal government has disregarded the public policy of the State of Florida that I do not belong in prison for a commercial sex act.

   The text of §2422(b) allows for many such situations. For example, if an 18 year old defendant, using a cell phone (a means of interstate commerce) to text their 17 year old sweetheart, and arranges to meet after school with the intention of engaging in any sexual activities, the 18 year old could be charged with a number of criminal offenses, ranging from "travelling to meet a minor for sex", to "lewd and lascivious molestation", or even charges of "statutory rape". In today's world, many teens between the ages of 14 and 17 are beginning to explore their sexuality, and many of them engage in activities which could result in criminal charges, although most prosecutors are not interested in trying to send teens to prison for such things. The virtually boundless judicial element, "any facility or means",

page 13

renders each and every one of them liable to prosecution under 18 U.S.C. §2422(b).

Whether the "means" involved in such a case is 'vague' or 'clear', it still includes using your voice to persuade, induce, entice, or coerce someone else into a sex act, and there is no commonsense limiting language that requires an offender to be over 18, or even charged with the State offense, before determining that someone is guilty of violating this statute.

Obviously, prosecuting teen lovers is not a realistic assessment of congressional intent, but we must remember, "[T]he fact that Congress may not have foreseen all the consequences of a statutory enactment is not sufficient reason for refusing to give effect to its plain meaning." Union Bank v. Wolas, 502 U.S. 151, 158, 112 S.Ct. 527, 531 (1991). By its plain terms, any time two teenagers have talked, texted, emailed, travelled to meet each other, or written with pen and paper, they have utilized a means of interstate commerce. Should either be under 18, and they then engage in some sexual activity for which a criminal offense exists, §2422(b) then allows federal prosecution, punishing them for the *potential* of being charged with a strictly local offense.

Even in situations where most prosecutors might never pursue an indictment, let alone a conviction, that they *could* be charged means they are subject to a mandatory 10 year federal prison term.

18 U.S.C. §2422(b) was crafted by the legislature with the idea that it would help to protect children. While this is an admirable, and unquestionably important legislative goal, we cannot simply ignore the serious constitutional issues that its enacted text presents us with. Not all statutes are model statutes, and we are sometimes forced to reexamine our statutes to ensure that they conform with our ever-evolving understanding of the law. This particular statute raises serious questions about whether or not it is unconstitutionally vague, is an unconstitutional exercise of the Commerce Clause Power of Congress to regulate non-economic criminal conduct, and if it impermissibly alters the balance between Federal and State criminal jurisdiction. For these reasons alone, §2422(b) must be closely examined by the full court, and its constitutional issues resolved, but also because it is the statute upon which the conviction and sentence in this case rests. If §2422(b) is found to be invalid because of these

page 14

issues, then the conviction and sentence must be vacated, and the Federal Government notified that the law is null and void, denying the Court jurisdiction under 18 U.S.C. §3231.

    The foregoing issues I raised were those I thought deserving of the most consideration, and which were of the greatest importance to the Court in considering whether to grant a rehearing en banc. That is not to say that I wish to abandon those contentions I raised in my Response With Incorporated Motion to Withdraw, filed in response to my prior counsel's Anders Brief. However, as the issues already detailed are the basis for grounds 1, 2, 3, and 8 of the Response, I raised them in greater detail.

    I still contend that the following grounds are meritorious reasons for appeal:

1) I believe that my motion under Rule 12(B)(3)(b) should have been granted as a matter of law.

2) For the reasons detailed in this petition for rehearing en banc, I believe 18 U.S.C. §2422(b) is an unconstitutional law, and therefore I plead guilty to conduct that cannot serve as an offense against the United States, warranting a reversal of conviction and sentence.

3) Because "an error of law is an abuse of discretion per se," _Alikhani v. United States_, 200 F.3d 732, 734 (11th Cir., 2000), for the reasons detailed in this petition, I believe the law clearly shows §2422(b) to be invalid, and therefore Judge John Antoon committed an abuse of discretion in denying my motion under Rule 12(B)(3)(b) in district court.

4) I believe that there was exculpatory evidence withheld from me on my discovery, which was a Brady violation, denying me due process.

5) I believe that Judge Antoon never held a proper inquiry into whether exculpatory evidence had been withheld, once he was made aware of the possible discovery violations, thereby committing reversable error.

6) I believe Judge Antoon abused his discretion at the evidentiary hearing on the motion to withdraw plea by impermissibly preventing me from raising three out of four of the required issues to be considered in a proper Buckles inquiry.

7) The plea was not knowingly entered because I was intentionally misled by counsel, and

page 15

because at no point in either the written plea agreement or the change of plea colloquy did I ever agree to relinquish the right to appeal my conviction, nor was I told that I was doing so by pleading guilty.

8) Allowing this conviction to stand would result in a manifest injustice due to the unconstitutional nature of §2422(b), the lack of jurisdiction of the court, and the fact that I never surrendered my right to appeal my conviction at any time.

9) I believe that I received ineffective assistance of counsel from both Jose Rodriguez and Daniel Brodersen during their representation of me during this case.

These nine grounds for appeal are explained in greater depth, with references and citations, in my Response With Incorporated Motion to Withdraw. They are not reproduced here with their arguments because I lack the writing supplies to do so, and because I do not have a necessary copy of the Response to copy, but I still wish to preserve them for appeal.

For the afforementioned reasons, and for the three reasons of exceptional importance which were raised on pages 1 and 2 of this letter, I believe that this case merits en banc review, and I ask for a rehearing en banc, and for the conviction and sentence in this case to be reversed and vacated.

I certify that, under penalty of perjury, the foregoing is true and correct.
Respectfully submitted by: _____ On this, the 13th of June, 2016.

Jonathan T. Prive
#337795
860 Camp Road
Cocoa, FL 32927

[DO NOT PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 15-12032
Non-Argument Calendar

_____

D.C. Docket No. 6:14-cr-00033-JA-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JONATHAN TYLER PRIVE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 24, 2016)

Before WILLIAM PRYOR, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Daniel Brodersen, appointed counsel for Jonathan Prive in this direct criminal appeal, has moved to withdraw from further representation of the appellant and filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). Our independent review of the entire record reveals that counsel's assessment of the relative merit of the appeal is correct. Because independent examination of the entire record reveals no arguable issues of merit, counsel's motion to withdraw is **GRANTED**, and Prive's conviction and sentence are **AFFIRMED**. Additionally, Prive's motion for appointment of new counsel is **DENIED**.

Certificate of Service

USA v. Jonathan Prive
Case No. 15-12032-DD

I, Jonathan Prive, do hereby certify that, on 06/14/2016, a true
and correct copy of the foregoing Petition For Rehearing En Banc has
been deposited in the Brevard County Jail's internal mailing system
and properly addressed to:
      United States Court of Appeals
      Eleventh Circuit
      Office of the Clerk
      56 Forsyth Street, N.W.
      Atlanta, GA 30303

And: Andrew C. Searle
      U.S. Attorney's Office
      Suite 3100
      400 W. Washington Street
      Orlando, FL 32801

Signed: _____
      Jonathan T. Prive
      #337795
      860 Camp Road
      Cocoa, FL 32927